UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHAIM KAPLAN, *et al.*, | |
| *Plaintiffs*, | |
| v. | Case No. 1:10-CV-00483 (RWR) |
| CENTRAL BANK OF THE ISLAMIC REPUBLIC OF IRAN, *et al.*, | |
| *Defendants*. | |

**MEMORANDUM OF LAW OF BANK SADERAT IRAN AND BANK SADERAT PLC
IN SUPPORT OF THEIR MOTION TO DISMISS**

# EXHIBIT D

ROBERT D. McCALLUM, JR.
Assistant Attorney General
VINCENT M. GARVEY
Deputy Branch Director
ALISON N. BARKOFF
Trial Attorney, Civil Division
Federal Programs Branch
U.S. Department of Justice
Post Office Box 883, Room 1020
Washington, D.C.  20044
Telephone:  (202) 514-5751
Facsimile:  (202) 616-8470

Attorneys for the United States

FILED
2002 SEP 27  AM 10: 25
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE I, et al., <br><br> Plaintiffs, <br><br> v. <br><br> LIU QI, et al., <br><br> Defendants. | No. C 02 0672 CW (EMC) <br> No. C 02 0695 CW (EMC) <br><br> <u>STATEMENT OF INTEREST</u> <br> <u>OF THE UNITED STATES</u> |
| PLAINTIFF A, et al., <br><br> Plaintiffs, <br><br> v. <br><br> XIA DEREN, et al., <br><br> Defendants. | |

By letter dated May 3, 2002, and by order dated August 5, 2002, this Court "solicit[ed] the Department of State's opinion on a number of issues" related to the above-captioned cases, including whether the cases are barred by the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1605-07, or are nonjusticiable

**STATEMENT OF INTEREST OF THE UNITED STATES, C 02 0672 CW(EMC), C 02 0695 CW(EMC)**

1  under the act of state doctrine. See Letter from U.S. Magistrate
2  Judge Edward M. Chen to William Howard Taft, IV of May 3, 2002;
3  Court's Aug. 5, 2002 Order. Pursuant to 28 U.S.C. §§ 516-617,
4  the Attorney General, on behalf of the Department of State,
5  hereby submits the following.
6     Attached hereto as Exhibit A is a letter, dated September
7  25, 2002, from William H. Taft, IV, Legal Advisor, U.S.
8  Department of State, to Robert D. McCallum, Jr., Assistant
9  Attorney General, which explains the Department of State's views
10 on the issues raised by the Court.
11
12                    Respectfully submitted,
13                    ROBERT D. McCALLUM, JR.
                      Assistant Attorney General
14
15                    /s/ Alison N. Barkoff
                      VINCENT M. GARVEY
16                    Deputy Branch Director
                      ALISON N. BARKOFF
17                    Trial Attorney, Civil Division
                      Federal Programs Branch
18                    U.S. Department of Justice
                      Post Office Box 883, Room 1020
19                    Washington, D.C.  20044
                      Telephone:  (202) 514-5751
20                    Facsimile:  (202) 616-8470
                      Attorneys for the United States
21
   Dated:  September 26, 2002
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28
   **STATEMENT OF INTEREST OF THE UNITED STATES, C 02 0672 CW(EMC), C 02 0695 CW(EMC)**

## CERTIFICATE OF SERVICE

I am over the age of 18 years and not a party to the within action. I am employed by the United States Department of Justice, Civil Division, Federal Programs Branch. My business address is 901 E Street, N.W., Washington, D.C. 20004.

On <u>September 26, 2002</u>, I served <u>STATEMENT OF INTEREST OF THE UNITED STATES</u> on the persons named below, by enclosing a copy in an envelope addressed as shown below and placing the envelope for collection and mailing on the date and at the place shown below following our ordinary business practices. I am readily familiar with the practice of this office for collection and processing correspondence for mailing. On the same day that correspondence in placed for collection and mailing, it is deposited in the ordinary course of business within the United States Postal Service in a sealed envelope with postage fully prepaid.

Date of mailing: <u>September 26, 2002</u>. Place of mailing: <u>Washington, D.C.</u> Persons to whom mailed:

    Joshua Sondheimer
    The Center for Justice & Accountability
    870 Market Street, Suite 684
    San Francisco, CA  94102
    Attorney for plaintiffs in <u>Doe v. Liu Qi</u>

    Terri E. Marsh
    1333 Connecticut Ave., N.W.
    Suite 608
    Washington, D.C.  20008
    Attorney for plaintiffs in <u>Doe v. Liu Qi</u>

    Paul Hoffman
    Schonbrun DeSimone Seplow Harris & Hoffman LLP
    723 Ocean Front Walk
    Venice, CA  90291
    Attorney for plaintiffs in <u>Doe v. Liu Qi</u>

///

**STATEMENT OF INTEREST OF THE UNITED STATES, C 02 0672 CW(EMC), C 02 0695 CW(EMC)**

1  Karen Parker
   154 5th Avenue
2  San Francisco, CA 94118
   Attorney for plaintiffs in <u>Plaintiff A v. Xia Deren</u>
3
   Morton Sklar
4  World Organization Against Torture USA
   1725 K St., N.W., Suite 610
5  Washington, D.C. 20006
   Attorneys for plaintiffs in <u>Plaintiff A v. Xia Deren</u>
6
   I declare under penalty of perjury under the laws of the
7
   United States of America that the foregoing is true and correct.
8
   Executed on <u>September 26, 2002</u>, at Washington, D.C.
9

10                                        _____
                                          Alison N. Barkoff
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
   **STATEMENT OF INTEREST OF THE UNITED STATES, C 02 0672 CW(EMC), C 02 0695 CW(EMC)**

THE LEGAL ADVISER

DEPARTMENT OF STATE

WASHINGTON

September 25, 2002

Honorable Robert D. McCallum
Assistant Attorney General
Civil Division
United States Department of Justice
10th Street & Constitution Avenue, N.W.
Washington, D.C. 20530

  Re: *Doe, et al. v. Liu Qi, et al.*, and *Plaintiff A, et al. v. Xia Deren*, Civil Nos. C 02-0672 CW (EMC) and C 02-0695 CW (EMC) (N.D. Cal.)

Dear Mr. McCallum:

  By letter dated May 3, U.S. Magistrate Judge Edward M. Chen of the Northern District of California solicited the Department of State's views on several issues in connection with the above-captioned case. Encl 1. Magistrate Chen asked that we respond before July 5, either by letter or statement of interest pursuant to 28 U.S.C. § 517. On June 25, the Department of Justice sought and received an extension of time to August 9. On July 25, the District Court consolidated proceedings in the *Plaintiff A v. Xia Deren* case with *Liu*, and referred that case also to Magistrate Judge Chen. On August 5, Magistrate Chen vacated the previous briefing schedule, and invited the State Department to provide its views on either or both of these cases by September 27. We ask that you please file a copy of this response to these requests with Magistrate Chen in whatever manner you deem most appropriate under the circumstances.

  In *Liu*, the gravamen of plaintiffs' complaint is that the defendant, as Mayor of Beijing, People's Republic of China ("PRC"), either knew or should have known about various human rights abuses that were allegedly perpetrated against adherents to the Falun Gong movement in Beijing, and that he was under a duty under both Chinese and

international law to prevent such actions.[1] The complaint alleges that Defendant Liu "planned, instigated, ordered, authorized, or incited police and other [PRC] security forces to commit the abuses suffered by Plaintiffs, and had command or superior responsibility over, controlled, or aided and abetted such forces in their commission of such abuses. The acts alleged herein...were carried out in the context of a nationwide crackdown against Falun Gong practitioners." Compl., ¶ 2.

In *Liu*, all but one of the plaintiffs are aliens; four apparently reside in the United States. Federal subject matter jurisdiction is alleged to lie under customary international law, the Torture Victims Protection Act (TVPA), 28 U.S.C. § 1350, note, the Alien Tort Statute (ATS), 28 U.S.C. § 1350, and 28 U.S.C. § 1331. Id., ¶ 3.

As noted in Magistrate Chen's May 3 letter, a default was entered in favor of the plaintiffs on March 12. Plaintiffs subsequently moved for judgment by default. In reviewing that motion, the Court has asked for the Department's views on two questions: (1) whether the case is barred under the Foreign Sovereign Immunities Act ("FSIA"), and (2) whether the Court should find the case "nonjusticiable" under the Act of State doctrine. We address these issues in turn.

Before turning to the questions posed by the Court, we would note Magistrate Chen's subsequent invitation to provide the Department's views in the *Xia* case. From our review of that complaint, we conclude, as did Magistrate Chen in his August 5 order, that the relevant issues involved in both cases are "similar, if not identical." In these circumstances, we see no need to comment separately on the *Xia* case; the views as expressed below regarding *Liu* may be taken to apply *mutatis mutandis* to *Xia*. At the same time, we note that the complaint in *Xia* is unambiguous in asserting that the defendant was acting in his official capacity.

We also stress our deep concern about the human rights abuses that have been alleged in these complaints. The United States has repeatedly made these concerns known to the Government of the PRC and has called upon it to respect

---

[1] We note that the Complaint caption refers to "Liu Qi, and Does 1-5, inclusive," but we have not found specific reference in the complaint to any defendants other than Mr. Liu.

- 3 -

the rights of all its citizens, including Falun Gong practitioners. Our critical views regarding the PRC Government's abuse and mistreatment of practitioners of the Falun Gong movement are a matter of public record and are clearly set forth in the Department's annual human rights reports, the most recent version of which may be found at http://www.state.gov/drl/rls/hrrpt/2001/eap/8289.htm.

With respect to the FSIA, Magistrate Chen asked specifically whether the exception to immunity under 28 U.S.C. § 1605(a)(7) applies to the case against *Liu*. In our considered opinion, the exception under 28 U.S.C. § 1605(a)(7) does not apply by its terms, since the Peoples' Republic of China has never been designated as a state sponsor of terrorism within the meaning of subsection (A) of that provision. Nor, in our view, does the "tort" exception under 28 U.S.C. § 1605(a)(5) apply since none of the acts in question occurred in the United States. It does not appear to us that any other exception of the FSIA would be relevant to the facts alleged in the complaint. Therefore, if the FSIA is the appropriate legal framework for determining the issue, the action would have to be dismissed. See 28 U.S.C. §§ 1330, 1604 (immunity unless there is exception under 28 U.S.C. §§ 1605-1607).

Whether the FSIA applies to this case presents a number of issues for the Court to determine. We understand that, since *Chuidian v. Philippine National Bank*, 912 F.2d 1095 (9th Cir. 1990), the practice in the 9th Circuit has been to evaluate claims brought against individual foreign government officials in United States federal courts according to whether the allegations giving rise to the suit were performed in an official capacity. Where the conduct is found to be official, the courts have deemed the action to be, in effect, a claim against the foreign state, and have applied the analytical framework of the FSIA. Other jurisdictions have also adopted this approach. See, e.g., *Byrd v. Corporacion Forestal Y Industrial de Olancho S.A.*, 182 F.3d 380, 388-89 (5th Cir. 1999); *El-Fadl v. Central Bank of Jordan*, 75 F.3d 668, 671 (D.C. Cir. 1996).[2]

The following considerations may be relevant given this framework. As noted above, the only named defendant in *Liu* is Beijing's Mayor, Mr. Liu Qi. The allegations of

---

[2] The Executive Branch has not specifically endorsed the approach of *Chuidian*, but recognizes that it is controlling law in the 9th Circuit in which these cases arise.

the complaint are directed solely towards actions he allegedly took, or failed to take, as a senior official of the Chinese Government, in implementation of official policy. What is at issue, in the words of the complaint, is the "Chinese government's crackdown on Falun Gong," and more particularly the "[a]buses being committed by police and security forces in Beijing against the Falun Gong." Compl., ¶¶ 31, 32. The acts and omissions attributed to Mayor Liu are characterized as part of this "widespread governmental crackdown"; the duties he is said to have violated derived from his official position. The complaint specifically alleges that "[a]s the Mayor of the City of Beijing, Defendant Liu held and holds the power not only to formulate all important provincial policies and policy decisions, but also to supervise, direct and lead the executive branch of the city government, which includes the operation of the Public Security Bureau of Beijing, under which the police operate, and other security forces." Id., ¶ 34.[3]

It is noteworthy in this regard that the 9th Circuit has previously held that the FSIA is not rendered inapplicable because of alleged violations of customary international law by the officials of a foreign state defendant. *Siderman de Blake v. Argentina*, 965 F.2d 699 (9th Cir. 1992), cert. denied, 507 U.S. 1017 (1993). See also *Argentine Republic v. Amerada Hess*, 488 U.S. 428 (1989)(FSIA is exclusive basis for suit against foreign state notwithstanding alleged violations of international law by its officials). Because suits against current officials may well constitute the "practical equivalent" of suits against the sovereign, and because denial of immunity in such circumstances would allow "litigants to accomplish indirectly what the [FSIA] barred them from doing directly," *Chuidian*, supra at 1101-02, we believe the courts should be especially careful before concluding that the FSIA is inapplicable to a suit against a current official relating to the implementation of government programs. Cf., *Saudi Arabia v. Nelson*, 507 U.S. 349, 361 (1993)("the intentional conduct alleged here (the Saudi Government's wrongful arrest, imprisonment and torture of

---

[3] As is described more fully below, this is one of a series of suits in U.S. courts against Chinese officials for actions allegedly taken against Falun Gong practitioners. This pattern may reinforce the inference from the complaint that, at bottom, this suit is directed at PRC government policies rather than past conduct of a specific official.

Nelson) ... boils down to abuse of the power of its police by the Saudi Government, and however monstrous such abuse undoubtedly may be, a foreign state's exercise of the power of its police has long been understood ... as peculiarly sovereign in nature"). Otherwise, plaintiffs could evade the FSIA altogether by the simple expedient of naming a high level foreign official as a defendant rather than a foreign state.

We acknowledge the expanding body of judicial decisions under the TVPA holding *former* foreign government officials liable for acts of torture and extrajudicial killing despite (or indeed because of) the fact that the defendants abused their governmental positions. See, e.g., *Xuncax v. Gramajo*, 886 F. Supp. 162 (D.Mass. 1995); *Hilao v. Estate of Marcos*, 103 F.3d 767 (9th Cir. 1996); *Cabello Barreuto v. Fernández Larios*, 205 F.Supp.2d 1325 (N.D.Fla. 2002). The principal aim of the TVPA was to codify the decision of the Second Circuit in *Filartiga v. Pena-Irala*, 630 F.2d 876 (2d Cir. 1980), by providing an explicit statutory basis for suits against former officials of foreign governments over whom U.S. courts have obtained personal jurisdiction, for acts of torture and extrajudicial killing committed in an official capacity. The Senate Report on the TVPA states that "[b]ecause all states are officially opposed to torture and extrajudicial killing … the FSIA should normally provide no defense to an action taken under the TVPA against a *former* official" (emphasis supplied).[4]

At the same time, the TVPA was not intended to override otherwise existing immunities from U.S. jurisdiction, as courts have recognized in suits brought under these statutes against *current* or *sitting* foreign governmental officials.[5] See, e.g., *Saltany v. Reagan*, 702

---

[4] As this sentence indicates, Congress anticipated that, although it would not normally be so, in some cases involving officials who had left office, exercise of jurisdiction under the TVPA would still be inappropriate. See, e.g., S. Rep. No. 102-249, at *8 ("To avoid liability by invoking the FSIA, a former official would have to prove an agency relationship to the state, which would require that the state admit some knowledge or authorization of relevant acts.")(internal quotation marks omitted). The cases before Magistrate Chen do not pose the question of how *Chiudian* should be applied to such former officials.

[5] Dealing with sitting officials is a component of the President's power over the nation's foreign relations. See, e.g., *United States v. Curtiss-Wright Corp.*, 299 U.S. 304, 320 (1936) (describing "the very delicate, plenary and exclusive power of the President as the sole

- 6 -

F. Supp. 319 (D.D.C. 1988); *Lafontant v. Aristide*, 844 F. Supp. 128 (E.D.N.Y. 1994); *Tachiona v. Mugabe*, 169 F.Supp.2d 259 (S.D.N.Y. 2001). These cases are consistent with relevant international authority, such as the decisions of the International Court of Justice in the *Yerodia* case (*Case Concerning the Arrest Warrant of 11 April 2000 - Democratic Republic of the Congo v. Belgium*, Judgment of Feb. 14, 2002) and the European Court of Human Rights in *Al-Adsani v. The United Kingdom* (No. 35763/97, Judgment of Nov. 21, 2001).

In response to Magistrate Chen's second set of questions ("Should the Court find the case nonjusticiable under the Act of State doctrine? What effect will adjudication of this suit have in the foreign policy of the United States?"), we respectfully offer the following observations for the Court's consideration.

Litigation in U.S. courts challenging the legality of a foreign government's actions, or inactions, taken within its own territory, can present sensitive dimensions, as recognized in a number of decisions of the U.S. Supreme Court. See, e.g., *Underhill v. Hernandez*, 168 U.S. 250, 252 (1897); *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 428 (1964); *W.S. Kirkpatrick & Co., Inc. v. Environmental Tectonics Corporation, Int'l*, 493 U.S. 400, 405 (1990)). Cf., *Baker v. Carr*, 362 U.S. 186 (1962). The Court has recognized that the judiciary should approach such litigation with the utmost care and circumspection.

We note that *Liu* is only one of several recent cases brought in U.S. federal courts by Falun Gong adherents against high-level PRC officials--typically, under the ATS and the TVPA. The case just added to these proceedings, *Plaintiff A et al. v. Xia Deren*, is but the most recent example. See also, e.g., *Peng, et al. v. Zhao*, No. 01 Civil 6535 (DLC) (SDNY) (default judgment in nominal amount of $1 entered, December 26, 2001; defendant Zhao Zhifei was said to be the Department Head of the Public Security

---

organ of the federal government in the field of international relations"). If Congress intended to alter the balance of power between the Executive and Legislative Branches in the area of foreign policy, Congress would be required to adopt a clear statement of that intent. "[T]he 'clear statement' rule," which "was originally articulated to guide interpretation of statutes that significantly alter the federal-state balance," should also be applied to "statutes that significantly alter the balance between Congress and the President." *Armstrong v. Bush*, 924 F.2d 282, 289 (D.C.Cir. 1991).

Bureau of Hubei Province); *Jin, et al. v. Ministry of State Security*, et al., No. 02-CV-627 (DDC)(case pending); *Petit, et al. v. Ding*, No. CV 02-00295 (D. HI)(case pending) (defendant Ding Guangen is said to be the Deputy Chief, Falun Gong Control Office, and Minister for Media and Propaganda, Central Committee of the Chinese Communist Party of the PRC). In our judgment, adjudication of these multiple lawsuits, including the cases before Magistrate Chen, is not the best way for the United States to advance the cause of human rights in China.

The United States Government has emphasized many times to the Chinese Government, publicly and privately, our strong opposition to violations of the basic human rights of Falun Gong practitioners in China. We have made clear, on repeated occasions, our absolute and uncompromising abhorrence of human rights violations such as those alleged in the complaint, in particular torture, arbitrary detention, interference with religious freedom, and repression of freedom of opinion and expression. The Executive Branch has many tools at its disposal to promote adherence to human rights in China, and it will continue to apply those tools within the context of our broader foreign policy interests.

We believe, however, that U.S. <u>courts</u> should be cautious when asked to sit in judgment on the acts of foreign officials taken within their own countries pursuant to their government's policy.[6] This is especially true when (as in the instant cases) the defendants continue to occupy governmental positions, none of the operative acts are alleged to have taken place in the United States, personal jurisdiction over the defendants has been obtained only by alleged service of process during an official visit, and the substantive jurisdiction of the court is asserted to

---

[6] As the Department of State testified before the Senate Committee on the Judiciary during its consideration of the TVPA, "From a foreign policy perspective, we are particularly concerned over the prospect of nuisance or harassment suits brought by political opponents or for publicity purposes, where allegations may be made against foreign governments or officials who are not torturers but who will be required to defend against expensive and drawn-out legal proceedings. Even when the foreign government declines to defend and a default judgment results, such suits have the potential of creating significant problems for the Executive's management of foreign affairs. … We believe that inquiry by a U.S. court into the legitimacy of foreign government sanctions is likely to be viewed as highly intrusive and offensive." S. Hrg. 101-1284 on S. 1629 and H.R. 1662 (June 22, 1990) at 28 (Prepared Statement of David P. Stewart).

rest on generalized allegations of violations of norms of customary international law by virtue of the defendants' governmental positions. Such litigation can serve to detract from, or interfere with, the Executive Branch's conduct of foreign policy.

We ask the Court in particular to take into account the potential for reciprocal treatment of United States officials by foreign courts in efforts to challenge U.S. government policy. In addressing these cases, the Court should bear in mind a potential future suit by individuals (including foreign nationals) in a foreign court against U.S. officials for alleged violations of customary international law in carrying out their official functions under the Constitution, laws and programs of the United States (e.g., with respect to capital punishment, or for complicity in human rights abuses by conducting foreign relations with foreign regimes accused of those abuses). The Court should bear in mind the potential that the United States Government will intervene on behalf of its interests in such cases.

If the Court finds that the FSIA is not itself a bar to these suits, such practical considerations, when coupled with the potentially serious adverse foreign policy consequences that such litigation can generate, would in our view argue in favor of finding the suits non-justiciable. However, if the Court were to determine that dismissal is not appropriate, we would respectfully urge the Court to fashion its final orders in a manner that would minimize the potential injury to the foreign relations of the United States.

Sincerely,

*William H. Taft*

William H. Taft, IV

Enclosures:
    As stated.