# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CHAIM KAPLAN, et al.,

        Plaintiffs,

        v.                             Civ. No. 10-00483(RWR)

THE CENTRAL BANK OF
THE ISLAMIC REPUBLIC OF IRAN, et al.,

        Defendants.

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO THE MOTION TO DISMISS FILED BY DEFENDANTS BANK SADERAT IRAN AND BANK SADERAT PLC

### Introduction

This is a civil action brought pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq*., the Antiterrorism Act ("ATA"), 18 U.S.C. § 2333(a), the Alien Tort Claims Act ("ATCA"), 28 U.S.C. § 1350, and supplemental causes of action, arising from a series of rocket and missile attacks on civilians in Israel carried out by the Hezbollah terrorist organization between July 12 and August 14, 2006 ("Hezbollah Rocket Barrage").

The plaintiffs are American, Israeli and Canadian civilians who were injured in the Hezbollah Rocket Barrage, and the family members and personal representatives of the estates of four Israeli civilians who were murdered by the Hezbollah Rocket Barrage.

The named defendants are the Islamic Republic of Iran ("Iran") the Central Bank of the Islamic Republic of Iran ("CBI"), Bank Saderat Iran ("BSI") and Bank Saderat PLC. [1]

---

[1] Plaintiffs have also sued officers of Iran, CBI, BSI and BSIPLC as "Doe" defendants. Plaintiffs will name these defendants, as appropriate, after discovery reveals their identities.

The plaintiffs allege, based on information released by the United States Treasury, that defendants transferred funds to Hezbollah during the years prior to the Hezbollah Rocket Barrage, and are therefore liable for plaintiffs' harm. *See* Complaint, dkt. # 3.

Defendants BSI and BSPLC have moved to dismiss the Complaint. Dkt. # 15.

Plaintiffs respectfully submit this memorandum in opposition to the motion to dismiss filed by defendants BSI and BSPLC.[2]

For the reasons set forth below that motion should be denied.

## RELEVANT BACKGROUND

The motion to dismiss filed by BSI and BSPLC is based on an incorrect understanding of both the factual allegations of the Complaint and the causes of actions asserted therein.

Therefore, before responding to the arguments raised in the motion, plaintiffs will briefly review the factual basis for this action and the nature of their claims against BSI and BSPLC.

Plaintiffs are American, Israeli and Canadian citizens who were injured by missiles and rockets fired by Hezbollah at civilian targets in Israel between July 12 and August 14, 2006, including the family members and personal representatives of the estates of four Israeli civilians who were murdered by these Hezbollah attacks.

---

[2] As the plaintiffs have previously noted it is unclear whether BSI is an agency or instrumentality of Iran. Iran owns 49% of BSI's shares, and another 40% of the shares are owned by the Edalat Stock Agency, which may be part of the Iranian government. Dkt. # 17.

Plaintiffs have been unable to determine Edalat's status conclusively, and they intend to move for jurisdictional discovery on this issue and, if necessary, to move to amend the complaint. However, because BSI has indicated that it will oppose jurisdictional discovery, plaintiffs have not sought to delay the filing of the instant opposition pending a decision about such discovery. Plaintiffs anticipate that they will file their motion for jurisdictional discovery in the near future.

Plaintiffs and their decedents are and were civilians and noncombatants; they were injured by Hezbollah's rocket and missile attacks in their homes, on the street, and while otherwise innocently going about their daily business. Dkt. # 3 at ¶¶ 56-111.

Hezbollah is a terrorist organization. While it also functions as a political party in Lebanon, it is not an agency, instrumentality or organ of Lebanon. Hezbollah has been designated by the U.S. Government as a Specially Designated Terrorist ("SDT") continuously since 1995, as a Foreign Terrorist Organization ("FTO") continuously since 1997, and as a Specially Designated Global Terrorist ("SDGT") continuously since 2001. Dkt. # 3 at 33.

The U.S. Treasury has confirmed that in the years prior to Hezbollah's attacks on the plaintiffs, defendants BSI and BSPLC transferred funds from Iran to Hezbollah. *Id*. at ¶¶ 34-53.

The American plaintiffs assert claims under the FSIA, 28 U.S.C. §§ 1605A(c)-(d). Dkt. # 3 at ¶¶ 117-126.[3] These provisions create a cause of action for U.S. citizens for personal injury, death or property loss caused by acts of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such acts. § 1605A.

The American plaintiffs also assert a claim pursuant to the Antiterrorism Act ("ATA") 18 U.S.C. § 2333, which creates a cause of action for American citizens harmed by acts of "international terrorism. Dkt. # 3 at ¶¶ 127-135.[4]

The phrase "international terrorism" as used in ATA § 2333 is a specific term of art defined in ATA § 2331 of the ATA as "activities" that meet four cumulative conditions: *First*, the activities must "involve violent acts or acts dangerous to human life"; *Second*, the activities

---

[3] As discussed below, BSI asserts that it is not an agency or instrumentality of Iran and is therefore not subject to suit under the FSIA.

[4] If BSI is found not to be an agency or instrumentality of Iran then it would be subject to plaintiffs' cause of action under § 2333, as discussed below.

must involve "acts ... that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State"; *Third*, the activities must "appear to be intended: (i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping"; and *Fourth*, the activities must "occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum." § 2331(1).

The American plaintiffs also assert a cause of action for aiding an abetting acts of "international terrorism" within the meaning of ATA § 2333. Dkt. # 3 at ¶¶ 136-145.

The plaintiffs who are the family members and personal representatives of the estates of Israeli civilians who were murdered by the Hezbollah attacks assert a cause of action under the Alien Tort Claims Act ("ATCA"), 28 U.S.C. § 1350, for the extrajudicial killing of their decedents and the harm caused to them. Dkt. # 3 at ¶¶ 146-153.

Additionally, all the plaintiffs assert supplemental causes of action for Negligence and Vicarious Liability (i.e. aiding and abetting) under Israeli law. Dkt. # 3 at ¶¶ 154-173.

## ARGUMENT

### I.     There Is No Basis to Dismiss This Action on Grounds of Nonjusticiability, or in Light of the Act of State Doctrine

Defendants BSI and BSPLC assert that the instant action must be dismissed as raising a non-justiciable question and as precluded by the "act of state" doctrine, because it purportedly requires the Court to determine that Hezbollah's attacks on the plaintiffs were not a "war" as stated by Israeli leaders, but rather a series of terrorist attacks. *See* dkt. # 15 at 1 ("To prevail in

this case, plaintiffs must convince this Court, and this Court must find, among other matters, that the armed conflict widely known as the Second Lebanon War, and officially declared a war by Israel, was instead a series of terrorist attacks") (footnote omitted); at 5 ("If this action proceeds, the Court will have to decide whether the attacks complained of by plaintiffs were acts of war, as the Israeli government described them, or were instead acts of terrorism, as the complaint seeks to characterize them. Such a political determination is left to the executive and legislative branches, not the courts, because of the risk that it would interfere with the conduct of foreign policy."); at 7 ("Whether there was a war between Israel and Lebanon is a matter that is not committed to the judicial, but to the legislative and executive, branches. Here, the Israeli government has already determined that a state of war existed with Lebanon."); at 11 ("Here, the validity of Israel's official act, performed within its territory (its declaration of war against Lebanon) is at the center of this litigation. For plaintiffs' claims to succeed, the Court will be required to determine the validity of Israel's contention that a state of war (namely, the Second Lebanon War) existed at the time of the attacks described in the complaint."); and at 12 ("In this case, the plaintiffs ask the Court to overrule Prime Minister Olmert's statement that Lebanon and Israel were at war and to find instead that the armed conflict that occurred in July and August of 2006 was solely an act of terrorism by Hezbollah.").

This argument is totally meritless. Even assuming, *arguendo*, that the "political question" and "act of state" doctrines somehow precluded this Court from contradicting Israel's characterization of the 2006 conflict as a "war," nothing whatsoever in this action requires the Court to address – much less contradict – Israel's description of that conflict as "war."

True, the American plaintiffs assert claims for "international terrorism" under ATA §
2333. But as discussed *supra*, the phrase "international terrorism" within the meaning of ATA §
2333 is a specific term of art, defined in § 2331 as consisting of specific elements.

It would be fantastic to conclude that if this Court determines that the American plaintiffs
have successfully pled and proven their cause of action for "international terrorism," as defined
in § 2331, that would somehow conflict with Israel's position that it was engaged in a "war."
Obviously, proclamations by the Israeli government that it was engaged in a "war" did not imply
in the slightest that Hezbollah's firing of rockets at civilians did not constitute "international
terrorism" within the meaning of § 2331 of Title 18 of the United States Code.

The Court can assume with full confidence that when former Israeli Prime Minister
Olmert declared that Israel was at "war" he was not making an implicit policy determination that
Hezbollah's attacks did not fulfill the statutory conditions of ATA § 2331.

Indeed, defendants' entire argument rests on the false premise that "war" and "terrorism"
are mutually exclusive concepts. A similar argument was made and rejected in *Almog v. Arab
Bank*, 471 F.Supp.2d 257 (E.D.N.Y. 2007). There, the defendants argued that terrorism could not
constitute war crimes or genocide. The court rejected this false conflict: "Arab Bank ... argues
that the underlying suicide bombings and other murderous acts … which it says are 'commonly
referred to as terrorism,' cannot be a violation of the law of nations because there is no consensus
on the meaning of 'terrorism.' [However] there is no need to resolve any definitional disputes as
to the scope of the word 'terrorism' ... the pertinent issue here is only whether the acts as alleged
by plaintiffs violate a norm of international law, however labeled." *Id*. at 280.

Here, the American plaintiffs assert a cause of action under ATA § 2333 for conduct which Congress has dubbed "international terrorism." But that is simply a **label** for the federal tort defined and created in ATA §§ 2331 and 2333.

For defendants to assert that Hezbollah's attacks on civilians cannot be both a "war" and "international terrorism" within the meaning of the ATA, is no different than saying that those attacks cannot constitute both a "war" and the tort of "negligence" that the plaintiffs have pled.

In sum, defendants "political question" and "act of state" arguments are without merit.[5]

## II.    Plaintiffs' Injuries Are Fairly Traceable to Defendants BSI and BSPLC.

Defendants next argue that plaintiffs lack standing to sue BSI and BSPLC because their injuries are too attenuated from defendants' conduct. Dkt. # 15 at 14-16.

The identical argument was raised and rejected in the recent decision in *Wultz v. Islamic Republic of Iran*, --- F.Supp.2d ----, 2010 WL 4228350 (D.D.C. Oct. 20, 2010).

The *Wultz* plaintiffs alleged that a bank had transferred funds to the terrorist group that murdered the decedent. The bank moved to dismiss on the grounds for lack of standing, arguing that plaintiffs' injuries were too attenuated from the bank's conduct. Judge Lamberth resoundingly rejected this argument. *Wultz*, 2010 WL 4228350 at * 4-7.

The facts in *Wultz* are apposite to those here in all relevant respects, and the instant motion to dismiss for lack of standing should be rejected for the reasons set forth in *Wultz*.

---

[5] Notably, the federal courts have repeatedly rejected the argument that actions arising from terrorist attacks are nonjusticiable. *See e.g. Sokolow v. PLO*, 583 F.Supp.2d 451, 455-457 (S.D.N.Y. 2008) (denying defendants' motion to dismiss civil action arising from terrorist attacks for nonjusticiability); *Klieman v. Palestinian Authority*, 424 F.Supp.2d 153, 161-162 (D.D.C. 2006) (same); *Gilmore v. The Palestinian Interim Self-Government Authority*, 422 F.Supp.2d 96, 99-100 (D.D.C. 2006) (same); *Biton v. Palestinian Interim Self-Government Authority*, 310 F.Supp.2d 172, 184-85 (D.D.C. 2004) (same); *Knox v. PLO*, 306 F.Supp.2d 424, 448-49 (S.D.N.Y. 2004) (same). *See also Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 49 (2nd Cir. 1991) ("The department to whom this issue has been 'constitutionally committed' is none other than our own – the Judiciary.").

Plaintiffs would add only that the conclusion in *Wultz* is bolstered by the recent decision of the Supreme Court in *Holder v. Humanitarian Law Project*, 130 S.Ct. 2705 (2010). In *Holder* the Supreme Court found that "[f]oreign organizations that engage in terrorist activity are so tainted by their criminal conduct that ***any contribution to such an organization*** facilitates that conduct." *Id*. at 2724 (emphasis in the original) (quoting Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), § 301(a)(7), 110 Stat. 1247, note following 18 U.S.C. § 2339B (Findings and Purpose)). *See also id*. at 2727 ("Given the purposes, organizational structure, and clandestine nature of foreign terrorist organizations, it is highly likely that any material support to these organizations will ultimately inure to the benefit of their criminal, terrorist functions …") (quoting affidavit submitted by the State Department); *id*. at 2728 (finding that it is "the considered judgment of Congress and the Executive that providing material support to a designated foreign terrorist organization – even seemingly benign support – bolsters the terrorist activities of that organization. That judgment … is entitled to significant weight, and we have persuasive evidence before us to sustain it.").

Thus, *Holder* precludes the assertion by BSI and BSPLC that their transfer of funds to Hezbollah was not a cause of the harm to the plaintiffs.

## III.   The ATCA Provides Original Subject-Matter Jurisdiction for the Claims of the Aliens Plaintiffs

Defendants next assert that the Court lacks subject matter jurisdiction under the ATCA because the non-American plaintiffs are not "aliens" (since they do not reside in the U.S.) and because "because killings and related injuries that occur during a war do not result from torts in violation of the law of nations." Dkt. # 15 at 16-19. Both of these arguments lack any merit.

Defendants "alien" argument was correctly rejected by *Lizarbe v. Rondon*, 642 F. Supp. 2d 473, 492 (D.Md. 2009) in light of the express holding in *Rasul v. Bush*, 542 U.S. 466, 484-85

(2004) that: "[t]he courts of the United States have traditionally been open **to nonresident aliens**.... And indeed, 28 U.S.C. § 1350 explicitly confers the privilege of suing for an actionable 'tort ... committed in violation of the law of nations or a treaty of the United States' on aliens alone." (emphasis added). This Court should reject this argument for the same reason.

Defendants' claim that "killings and related injuries that occur during a war do not result from torts in violation of the law of nations" (dkt. # 15 at 18-19) is peculiar at best. On the contrary, war crimes are widely recognized as a violation of the law of nations actionable under the ATCA. *See e.g. Kadic v. Karadzic*, 70 F.3d 232 (2nd Cir. 1995).

## IV.   The Alien Plaintiffs Plead a Viable Claim for Aiding and Abetting Under the ATCA

Defendants next argue that the alien plaintiffs have failed to plead a claim for aiding and abetting under the ATCA on several grounds (dkt. # 15 at 19-23) all of which are meritless:

Defendants first argue that the alien plaintiffs' allegations regarding defendants' conduct are not "plausible." Yet, as the defendants admit, those allegations are based on an official statement released by the United States Treasury (Exhibit A to the Complaint).

Essentially, BSI and BSPLC are arguing that the Treasury's accusations against them are not plausible. The Court should not even entertain such an argument.

BSI and BSPLC next argue that the conduct attributed to them amounts to nothing more than "routine banking services" which does not amount to the "substantial assistance" required to state an aiding and abetting claim. In fact, the Complaint alleges, based on information officially released by the Treasury, that BSI and BSPLC transferred some $50 million to Hezbollah. If that does not constitute "substantial assistance," nothing does.

Nor is there anything "routine" about defendants' conduct: "Given plaintiff's allegations regarding the knowing and intentional nature of [the defendant] Bank's activities there is nothing

'routine' about the services the Bank is alleged to provide." *Wultz* at * 29 (quoting *Linde v. Arab Bank, P.L.C.*, 384 F.Supp.2d 571, 588 (E.D.N.Y. 2005)).

BSI and BSPLC also assert that the Complaint fails to allege facts showing that they intended to support Hezbollah's terrorism. In fact, ¶¶ 23-53 of the Complaint – and especially ¶27 – explain exactly why BSI and BSPLC intentionally transferred funds to Hezbollah.

BSI and BSPLC also argue that the alien plaintiffs have not plausibly alleged causation, but this argument is foreclosed by *Holder*, which established as a matter of law and of fact that ***any*** provision of material support to a terrorist organization improves the organization's ability to carry out terrorist attacks.

Moreover, plaintiffs' allegations of causation, which are similar to those in *Wultz*, are plausible and adequate. *Compare* dkt. # 3 at ¶¶ 34-55, 112-116 with *Wultz* at *38, 48-52.

## V.     The Court Should Exercise Pendant Jurisdiction

Defendants argue that if the Court finds that it has no original subject-matter jurisdiction it should dismiss the supplemental, non-federal claims. Plaintiffs do not dispute that if the Court were to find it had no original jurisdiction, dismissal of the non-federal claims at this early stage of the litigation would be justified.

But this Court has three different bases for original subject-matter jurisdiction: the FSIA, the ATA and the ATCA. While BSI and BSPLC challenge the Court's jurisdiction under the ATA and ATCA, they do not deny that the Court has jurisdiction under the FSIA.

Moreover, as shown herein, defendants' motion to dismiss the supplemental claims for absence of original jurisdiction should be denied.

Nor is there any merit in defendants' claim that some of the supplemental claims do not arise from the same common nucleus of fact at the federal claims. The conduct at issue here is

the defendants' provision of funds to Hezbollah. The fact that different plaintiffs suffered different injuries is irrelevant; the question of liability in this case – in respect to **all** defendants – turns on the same conduct: provision of funds.

## VI.    The Supplemental Causes of Action State a Claim Under Israeli Law.

Defendants next argue that the Israeli causes of action asserted by the plaintiffs fail to state a claim, and in support of this argument rely in the decision in *Licci v. American Exp. Bank Ltd.*, 704 F.Supp.2d 403 (S.D.N.Y. 2010). In fact, however, the *Licci* court **declined** to apply Israeli law on the grounds that there is no on-point Israeli precedent dealing with a bank whose customer provided funds to a terrorist organization. *Id.* at 409-410.

By contrast, the recent decision in *Wultz*, which contains an extraordinarily thorough analysis of Israeli law (based *inter alia* on Judge Lamberth's independent research), concluded that the plaintiffs had stated viable claims for negligence and vicarious liability under Israeli law. *Wultz* at *42-52, 64-66. Given the factual similarities between *Wultz* and the instant case, the Court should follow *Wultz*. Indeed, *Wultz* distinguished Licci on the grounds that the Licci plaintiffs did not allege that the defendant bank had knowingly provided financial services to Hezbollah. *Id.* at *51. Here, as in Wultz, the plaintiffs allege such knowledge.

In any event, if the Court has any doubt about whether plaintiffs state a claim under Israeli law, the proper course is to deny the motion to dismiss for failure to state a claim. *See e.g. In re Countrywide Financial Corp. Mortg. Marketing and Sales Practices Litigation*, 601 F.Supp.2d 1201, 1221 (S.D.Cal. 2009) (Denying Rule 12(b)(6) motion to dismiss California state law claim since state law on this issue was unclear and therefore the "Court declines to conclude that this claim is legally incognizable."); *Allen v. Normand*, 2009 WL 2448253 at *6 (E.D.La. Aug. 7, 2009) ("When considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6) ... All

questions of fact and ***any ambiguities in the current controlling substantive law must be resolved in the plaintiff's favor***.") (internal quotation marks omitted) (emphasis added); *Allied Van Lines, Inc. v. Fairfield Ins. Co.*, 591 F.Supp.2d 852, 855 (E.D.La. 2008) (same); *In re National Century Financial Enterprises, Inc., Investment Litigation*, 541 F.Supp.2d 986. 1014 (S.D.Ohio 2007) (Declining "to dismiss ... aiding and abetting claims on a Rule 12(b)(6) motion, because it cannot be said conclusively that Ohio law does not recognize such a cause of action."); *Horne v. Farrell*, 560 F.Supp. 219, 227 (M.D.Pa. 1983) ("Since the state law is so unclear, the motion to dismiss under Rule 12(b)(6) will be denied. It is arguable that the plaintiff may be able to state a claim upon which relief may be granted."); *Arfons v. E. I. Du Pont De Nemours & Co.*, 261 F.2d 434, 435-436 (2nd Cir. 1958) (Since plaintiff "may be able to establish that the Connecticut choice of law rule would require us to look to the law of Ohio" and since the law of Ohio "might" provide plaintiff with grounds for relief, dismissal of case for failure to state a claim would be reversed); *American Mfrs. Mut. Ins. Co. v. American Broadcasting-Paramount Theatres, Inc.*, 221 F.Supp. 848, 851 (S.D.N.Y. 1963) ("With the law in flux, this is all the more reason for denying a motion to dismiss for failure to state a claim upon which relief can be granted."); *Harris v. Capehart-Farnsworth Corp.*, 207 F.2d 512, 516 (8th Cir. 1953) ("The Federal Rules of Civil Procedure do not sanction the disposition of doubtful issues of fact or law upon motions to dismiss for insufficiency of pleadings.") (citation omitted); *McDowell v. Canton R. Co.*, 118 F.Supp. 553, 555 (D.Md. 1954) ("As neither the facts nor the proper application of the law to this case are crystal clear at the present time, it is my view that the better practice is to overrule the motion without prejudice."); *Chicago & N. W. Ry. Co. v. Chicago Packaged Fuel Co.*, 183 F.2d 630 (7th Cir. 1950) (Where a serious question of law was presented motion of defendant to dismiss the complaint for failure to state a cause of action should have been denied).

**VII.    The Supplemental Causes of Action State a Claim Under Israeli Law.**

Defendants also move to dismiss the claims on behalf of the estates of the decedents, on the grounds that under Rule 17, capacity to represent the estate of a foreign decedent is governed by the law of the state in which the district court sits, and in the District of Columbia, a foreign personal representative must file a copy of his appointment in another jurisdiction.

This argument is based on a misreading of Rule 17. Defendants have focused on Rule 17(b), which provides that: "Capacity to sue or be sued is determined ... by the law of the state where the court is located." This provision would be relevant if the decedents' estates were named as parties. In fact, however, the estates are not parties, and suit is brought on their behalf by their heirs who, as alleged in the Complaint, are authorized under Israeli law to bring the instant action on their behalf. Dkt. # 3 at ¶¶ 8-11.

The applicable provision is therefore Rule 17(a) which provides in relevant part that: "An action must be prosecuted in the name of the real party in interest. The following may sue in their own names without joining the person for whose benefit the action is brought ... (A) an executor; (B) an administrator; ... (G) a party authorized by statute."

Accordingly, the claims on behalf of the estates of the decedents are properly brought by their heirs (who are authorized by Israeli law to asset claims on behalf of the estates). *See e.g. Del Valle Rodriguez v. Wheeler*, 16 F.R.D. 103, 104 (S.D.Tex. 1954) ("Rule 17(a), of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides that every action shall be prosecuted in the name of the real party in interest, but *a party authorized by statute may sue in his own name without joining with the party for whose benefit the action is brought*. Article 4675 of Vernon's Texas Civil Statutes provides that actions for damages arising from death may be brought by the surviving husband, wife, children and parents, 'or by either of them for the benefit of all.' This

right of any of the survivors to bring the action for the benefit, even without the consent, of all

has been upheld by the Texas Supreme Court, *Dennis v. Gulf, C. & S. F. Ry. Co.*, 148 Tex. 387,

224 S.W.2d 704).

**VIII.   The Relatives of the Decedents May Assert a Claim Under the ATCA**

Defendants also seek to dismiss the claims of the relatives of the decedents, on the

grounds that they are not entitled to damages under the ATCA. But the cases cited in support of

this claim do not deal with the ATCA, but rather with the Torture Victims Protection Act

("TVPA") which expressly limits recovery to the direct victim or his representative. *See Hurst v.*

*Socialist People's Libyan Arab Jamahirya*, 474 F. Supp. 2d 19, 30 (D.D.C. 2007) ("The

language of the TVPA limits recovery to the actual victim of torture, "the individual's legal

representative," or "a claimant in an action for wrongful death." *Id*. … The plain language and

the legislative history of the TVPA make clear that standing is limited to the victim herself or

one bringing a claim on behalf of a direct victim.").

By contrast, the ATCA allows recovery by the relatives of the victim. *See e.g. Xuncax v.*

*Gramajo*, 886 F.Supp. 162, 191 (D.Mass. 1995) (siblings can maintain a wrongful death action

under ATCA under the law of Guatemala) *Cabello v. Fernandez-Larios*, 157 F.Supp.2d 1345,

1356-58 (S.D.Fla. 2001) (same under the law of Chile).

**IX.   Israel and Lebanon Are Not Indispensible Parties**

Defendants also argue that this action must be dismissed because "In order to adjudicate

these claims, this Court would have to find as a matter of fact that plaintiffs were injured by acts

of terrorism, which is directly contrary to Israeli PM Olmert's statement" and that Israel and

Lebanon are therefore indispensible parties. As discussed above, this Court need not make any

determination contrary to Mr. Olmert's statements. This ground for dismissal is meritless.

## X.    Arguments Related to BSI

Defendants assert that BSI is not an agency or instrumentality of Iran, and that the plaintiffs' FSIA claims against BSI must therefore be dismissed. If BSI is not an agency or instrumentality of Iran (an issue which will require jurisdictional discovery to resolve) then the FSIA claims against BSI would indeed need to be dismissed.

However, that would not get BSI of the hook, because the Complaint pleads facts that state a claim against BSI under ATA § 2333. It is well established that a factually sufficient complaint will not be dismissed for failure to state a claim merely because the plaintiff has asserted an erroneous legal theory. S*ee e.g. Hack v. President & Fellows of Yale Coll.*, 237 F.3d 81, 89 (2nd Cir. 2000) ("We may not affirm the dismissal of a complaint because the plaintiff has proceeded under the wrong theory so long as he has alleged facts sufficient to support a meritorious legal claim.") (brackets and internal quotation marks omitted).

BSI also challenges service, arguing that since it is not an agency of Iran it "can only be served using one of the methods outlined in Fed.R.Civ.P. 4(f)(2)(A) through (C) … BSI was not served by any of these means" because it was served by DHL. Dkt. # 15 at n. 17. In fact, service by DHL satisfies these provisions. *See e.g. Estate of Manook v. Research Triangle Institute, International and Unity Resources Group*, 693 F.Supp.2d 4 (D.D.C. 2010).

Thus, if the Court concludes that BSI is not an agency or instrumentality of Iran, it should find that the Complaint states a valid claim against BSI under the ATA and Israeli law, and that BSI was properly served, and deny its motion to dismiss.

## X.    Plaintiffs' ATA Claims Are Not Barred by the "Act of War" Exception

Defendants argue that plaintiffs ATA claims are barred by the "act of war" exception codified at ATA § 2336(a). This argument fails for three reasons:

*First*, the courts in this district have held that as a matter of law, attacks on civilians are not covered by the "act of war" exception. *See Klieman v. Palestinian Authority*, 424 F.Supp.2d 153, 162-167 (D.D.C. 2006); *Biton v. Palestinian Interim Self-Government Authority*, 412 F.Supp.2d 1, 6-11 (D.D.C. 2005). *Second*, the federal courts have held, as a matter of fact, that attacks by terrorist groups on civilians do not constitute "armed conflict between military forces of any origin," since civilians are not part of any military forces. *Sokolow v. PLO*, 583 F.Supp.2d 451, 458-459 (S.D.N.Y. 2008). *Third*, the federal courts have refused to recognize terrorist groups as "military forces." *See Morris v. Khadr*, 415 F.Supp.2d 1323, 1333 (D.Utah 2006).

Accordingly, Hezbollah's attacks on the plaintiffs are not within the "act of war" exception.

## XI. Plaintiffs Sufficiently Plead Primary Liability Under the ATA

Defendants argue baldly that plaintiffs fail to state a claim under the ATA, because the Complaint does not allege facts supporting causation and knowledge or intent.

This argument borders on the frivolous. Plaintiffs' Complaint sets forth in full detail facts supporting all the elements of an ATA claim, including causation, knowledge and intent.

Again, the allegations of this case are substantially that same as in *Wultz*, where Judge Lamberth found with no difficultly that the plaintiffs had stated a valid ATA claim.

Notably, in *Boim v. Holy Land Foundation*, 549 F.3d 685 (7th Cir. 2008) (en banc), the majority held that the knowing provision of any material support to a terrorist organization renders the defendant liable for injuries subsequently inflicted by that organization, and that the plaintiff need not allege actual intent but only apparent intent, which is satisfied by showing that the defendant knowingly gave support to a terrorist group. *Wultz* adopted this holding. *Id* at *33.

**XII.    Plaintiffs Properly Plead Secondary Liability Under the ATA**

Defendants argue that the American plaintiffs' claim for aiding and abetting a violation

of the ATA must be denied because secondary liability is not available under the ATA.

*Wultz* considered and rejected this argument (id. at *39-42) and this Court should reject it

for the same reasons set forth in *Wultz*.

**XIII.   The Court Has Specific Personal Jurisdiction Over BSI and BSPLC**

Finally, BSI and BSPLC assert that the Court has no personal jurisdiction over them.

In fact, the Court has specific personal jurisdiction over both these defendants, because

their actions were aimed at harming the United States. *See* dkt. # 3 at ¶¶ 23-53.

It is well established that a U.S. court can exercise specific jurisdiction over a foreign

defendant despite the lack of any physical contact with the U.S. where the defendant engages in

malignant actions directed at the U.S.. *Mwani v. Bin Laden*, 417 F.3d 1 (D.C. Cir. 2005)).

Thus, because defendants sought to harm the United States through their conduct, this

Court can exercise specific jurisdiction.

Moreover, even if defendants had not directed their conduct at the United States, this

Court could exercise specific jurisdiction because:

> [I]t is … entirely foreseeable that an indiscriminate attack on
> civilians in a crowded metropolitan center such as Tel Aviv will
> cause injury to persons who reside in distant locales – including
> tourists and other visitors to the city, as well as relatives of
> individuals who live in the area. The ripples of harm that flow
> from such barbarous acts rarely stop at the banks of the
> Mediterranean Sea or the Jordan River, and those who engage in
> this kind of terrorism should hardly be surprised to find that they
> are called to account for it in the courts of the United States – or,
> for that matter, in any tribunal recognized by civilized peoples.

*Sisso v. Islamic Republic of Iran*, 448 F.Supp.2d 76, 90 (D.D.C. 2006).

**WHEREFORE**, defendants' motion to dismiss should be denied.

Plaintiffs, by their Attorneys,

THE BERKMAN LAW OFFICE, LLC

By:     /S/ Robert J. Tolchin
        Robert J. Tolchin
        (D.C. Bar #NY0088)
        111 Livingston Street, Suite 1928
        Brooklyn, New York 11201
        (718) 855-3627
        Fax: (718) 504-4943

## CERTIFICATION

I certify that on November 30, 2010, I filed the above memorandum by ECF which

served the following counsel of record:

Frank C. Razzano
Ivan B. Knauer
Jeremy D. Frey
Matthew D. Foster
John C. Snodgrass
PEPPER HAMILTON LLP
Hamilton Square
600 Fourteenth Street, N.W.
Washington, DC 20005-2004
(202) 220-1200

                                    /S/ Robert J. Tolchin