UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHAIM KAPLAN, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> CENTRAL BANK OF THE <br> ISLAMIC REPUBLIC OF IRAN, *et al.*, <br><br> *Defendants*. | Case No. 1:10-CV-00483 (RWR) <br><br> *Oral Argument Requested* |

**BANK SADERAT IRAN AND BANK SADERAT PLC'S
MEMORANDUM OF SUPPLEMENTAL AUTHORITY**

Frank C. Razzano
Jeremy D. Frey
Ivan B. Knauer
Matthew D. Foster
John C. Snodgrass

PEPPER HAMILTON LLP
Hamilton Square
600 Fourteenth Street, N.W.
Washington, DC 20005-2004
(202) 220-1200

*Counsel for Defendants
Bank Saderat Iran and
Bank Saderat PLC*

August 15, 2011

#14560803 v5

## INTRODUCTION

Defendants Bank Saderat Iran ("BSI") and Bank Saderat PLC ("BSPLC") submit this memorandum of supplemental authority in support of their motion to dismiss, filed August 23, 2010.[1] In that motion, BSI and BSPLC seek dismissal of plaintiffs' complaint, including plaintiffs' Fifth Claim under the Alien Tort Claims Act ("ATCA").[2]

The legal landscape regarding cases such as this remains in flux, with courts taking divergent views on such matters as corporate liability, secondary liability, and the state action element of ATCA claims.[3] Since BSI and BSPLC filed their notice of supplemental authority[4] regarding the Second Circuit's ruling in *Kiobel v. Royal Dutch Petroleum Co.*,[5] three different appeals court decisions have been issued that bear directly on the issues in this case: *John Doe VIII v. Exxon Mobil Corporation*;[6] *Flomo v. Firestone Natural Rubber Co.*;[7] and *Shafi v. Palestinian Authority*.[8] This memorandum explains why all three of these rulings counsel granting the motion to dismiss.

Because the D.C. Circuit's decision in *John Doe VIII* spans more than 150 pages, we begin by reviewing the facts of that case and what the D.C. Circuit held—and did not hold—

---

[1] ECF No. 15.

[2] 28 U.S.C. § 1350.

[3] Jonathan C. Drimmer & Sarah R. Lamoree, *Think Globally, Sue Locally: Trends and Out-of-Court Tactics in Transnational Tort Actions,* 29 BERKELEY J. IN'TL L. 456 (2011).

[4] ECF No. 22.

[5] 621 F.3d 111, 149 (2d Cir. 2010) (as amended Dec. 21, 2010), *reh'g en banc denied*, 2011 U.S. App. LEXIS 2200 (Feb. 4, 2011), *petition for cert. filed* (U.S. June 6, 2011) (No. 10-1491) ("*Kiobel*").

[6] 2011 WL 2652384 (D.C. Cir. July 8, 2011) ("*John Doe VIII*").

[7] 2011 WL 2675924 (7th Cir. July 11, 2011) ("*Flomo*").

[8] 686 F. Supp. 2d 23 (D.C. Cir. 2010) ("*Shafi*").

regarding key issues in this case. Then, we will review BSI and BSPLC's previous arguments for dismissal as they relate to the new authority and discuss how the recent cases reinforce BSI and BSPLC's previous arguments.

**I.**     ***John Doe VIII v. Exxon Mobil Corporation***

In *John Doe VIII v. Exxon Mobil Corporation*,[9] the D.C. Circuit ruled that a U.S. corporation may be held liable under the ATCA for aiding and abetting international law torts with a nexus to the United States where the corporation acted with knowledge of the primary violator's unlawful actions. The nexus to the United States is central to the D.C. Circuit's ruling in *John Doe VIII*. As the court's majority opinion makes clear, there must be some connection to the United States before an ATCA claim will be entertained by our courts. But in the present case, there is no U.S. nexus, and the Court has no *in personam* jurisdiction over BSI or BSPLC. Moreover, plaintiffs have made no specific, non-conclusory, factual allegation that BSI and BSPLC acted with knowledge of the international law violations alleged in the complaint. For these reasons, plaintiffs' ATCA claims against BSI and BSPLC must be dismissed.

**A.**     **Facts of *John Doe VIII***

The *John Doe VIII* case was brought by Indonesian villagers who alleged that Exxon Mobil's security forces in Indonesia, acting at the direction of persons in the company's U.S. headquarters, violated the ATCA through genocide, torture, extrajudicial killing, sexual violence, and kidnapping.[10] Deferring to a U.S. State Department filing that asserted that the case interfered with foreign relations, the district court dismissed the case and held that aiding

---

[9]     2011 WL 2652384 (D.C. Cir. July 8, 2011).

[10]    *Id.* at *1.

-3-

and abetting was not actionable under the ATCA.[11] On appeal, Exxon reiterated its argument that it was not liable for aiding and abetting, and argued for the first time that it could not be held liable under the ATCA because customary international law does not recognize corporate liability for human rights offenses.[12]

### B. Judge Rogers's Majority's Opinion in *John Doe VIII*

In a majority opinion written by Judge Rogers, the D.C. Circuit disagreed with Exxon's arguments.[13] It held that there is aiding and abetting liability under international law, and that a corporation with a nexus to the U.S. may be liable under the ATCA for aiding and abetting where the defendant corporation acted with "knowledge" of a violation of international law.

Regarding the state of mind required for aiding and abetting liability, the D.C. Circuit established a circuit split by disagreeing with the Second Circuit's ruling that an aider and abettor must act with the same "purpose" of violating international law and must share the primary violator's purpose.[14] Instead, the majority in *John Doe VIII* held, the *mens rea* requirement must be determined by reference to customary international law, which requires only a showing that the defendant had "knowledge" of the violation, and need not have shared the primary actor's purpose.[15]

---

[11] *Id.* at *2.

[12] *Id.*

[13] The majority was not persuaded by the State Department's submission, which it determined was ambiguous and, in any event, was not owed specific deference. *Id.* at *39. Judge Kavanaugh, in dissent, stated that the submission was entitled to deference. *Id.* at *63.

[14] *Id.* *14-18.

[15] *Id.* *19.

The D.C. Circuit also rejected Exxon's claim that the presumption against extraterritoriality in *Morrison v. National Australia Bank Ltd.*[16] deprived the court of jurisdiction to hear plaintiffs' ATCA claims. The court found the presumption to be overcome by the weight of the historical record, which supported the conclusion that U.S. courts may exercise extraterritorial jurisdiction over international law violations committed by U.S. citizens.[17]

The *John Doe VIII* majority also rejected Exxon's claim that corporations have no liability under the ATCA.[18] Analyzing the statute's text, the court noted that the statute made no distinction among classes of defendants. The court further held that applying the ATCA to corporations was consistent with the purpose of the early Congress in enacting the ATCA: to prevent private entities from entangling the new nation in disputes with foreign nations. From this historical context and textual analysis, the court concluded that corporations may be held liable under the ATCA for torts in violation of international law.[19] With its ruling in *John Doe*

---

[16] 558 U.S. ___, 130 S. Ct. 2869 (2010). *See generally John Doe VIII* at *6-11 (discussing the presumption).

[17] *Id.* at *7. The historical analysis undertaken by the D.C. Circuit in *John Doe VIII* demonstrates that the ATCA does not confer universal jurisdiction on federal courts for torts in violation of international law committed anywhere in the world. Rather, the court found the ATCA was intended to confer jurisdiction for international law offenses where there is a nexus to the United States, such as where an American citizen commits a violation abroad. This is really no more than an expression of one of the established principles of international jurisdiction: nationality jurisdiction. Citing Blackstone, Judge Rogers explained the court's rationale for its exercise of nationality jurisdiction in *John Doe VIII*: where an individual violates the law of nations, it is the duty of that person's government to take notice of the conduct, or otherwise become an aider and abettor of the violation of international law. *Id.* at *11.

[18] *Id.* at *20-36.

[19] The D.C. Circuit did, however, find that corporations are immune from liability under the Torture Victims Protection Act of 1991, 28 U.S.C. § 1350 note ("TVPA"). *Id.* at *34-35. The panel in *John Doe VIII* found that there is no primary or aiding and abetting liability for corporations under the TVPA. It based this holding on a determination that Congress's use of the term "individual" in the TVPA meant that the statute was not intended to apply to corporations or other organizations. This ruling leads to the incongruous result that an alien (who can sue corporations under the ATCA) has broader rights than an American citizen (who cannot sue under the ATCA and cannot sue a corporation under the TVPA) in the D.C. Circuit.

*VIII* on corporate liability, the D.C. Circuit split from the Second Circuit's ruling to the contrary in *Kiobel*.[20]

    **C.**    **Judge Kavanaugh's Dissent in *John Doe VIII***

In his dissenting opinion, Judge Kavanaugh stated that, under the presumption against extraterritoriality, the ATCA does not apply to conduct that occurs in foreign nations. Also, Judge Kavanaugh stated that the ATCA does not apply to claims against corporations. Judge Kavanaugh further opined that, even if corporations could be held liable for torture and extrajudicial killings under customary international law, they could not be held liable under the ATCA, because to allow such a claim would lead to a conflict with the TVPA. Finally, Judge Kavanaugh wrote, the court should have declined to hear the case because the State Department's filing asking it not to hear the case was entitled to specific deference.

**II.**    **Plaintiffs' ATCA Claim Must Be Dismissed Under the D.C. Circuit's Opinion in *John Doe VIII* Because There Is No U.S. Nexus**

As BSI and BSPLC previously argued in support of their motion to dismiss, the ATCA does not provide subject matter jurisdiction because plaintiffs are not aliens, and because the alleged killings did not violate international law.[21] We further noted in our motion to dismiss that, although a criminal court may assert universal jurisdiction for certain international law crimes, there is no authority that allows federal courts universal jurisdiction over civil torts.[22]

---

[20] 621 F.3d 111(2d Cir. 2010) (as amended Dec. 21, 2010), *reh'g en banc denied*, 211 U.S. App. LEXIS 2200 (Feb. 4, 2011), *petition for cert. filed* (U.S. June 6, 2011) (No. 10-1491).

[21] Memorandum of Law of Bank Saderat Iran and Bank Saderat PLC in Support of Their Motion to Dismiss ("Def. Mem.") at 16-17.

[22] *Id.* at 17 n. 10. The requirement of a U.S. nexus for an exercise of national jurisdiction in the criminal context is discussed in this Court's recent ruling in *United States v. Campbell*, Crim. No. 10-224 (RMC), 2011 U.S. Dist LEXIS 81918 (D.D.C. July 27, 2011). In *Campbell*, this Court held that a criminal statute that applied extraterritorially without a requirement of a U.S. nexus would be unconstitutionally "arbitrary and fundamentally unfair." *Id.* at *32-33; *34 ("[T]he existence of a [U.S.] nexus is what makes the prosecution neither
(continued...)

-5-

Judge Rogers's ruling in *John Doe VIII* reinforces this argument by making it clear that courts may only assert jurisdiction over international law torts under the ATCA where there is a U.S. nexus.

The requirement of a U.S. nexus is central to the D.C. Circuit's holding in *John Doe VIII*. Although Judge Rogers did not explicitly state that such a connection is required, the facts that the defendant was headquartered in the U.S. and directed the primary violators' actions from the corporation's U.S. headquarters were essential to the majority's rationale for refusing to apply the presumption against extraterritoriality set forth in the Supreme Court's decision in *Morrison v. National Australia Bank*.[23] Although Judge Rogers acknowledged the presumption against extraterritoriality, she found that it did not apply in *John Doe VIII* because of a common law exception. This exception overrode the extraterritoriality presumption because the case involved the exercise of national jurisdiction by a U.S. court to remedy international law violations by one of its own citizens.[24]

Holding that "the question…is not whether the ATCA applies extraterritorially but is instead whether the common law causes of action that federal courts recognize in [ATCA] lawsuits may extend to harm to aliens occurring in foreign countries," Judge Rogers first looked

---

(continued...)

arbitrary nor fundamentally unfair.") (quoting *United States v. Shahani-Jahromi*, 286 F. Supp. 2d 723, 728 n. 9 (E.D. Va. 2003)).

[23]   558 U.S. ___, 130 S. Ct. 2869 (2010).

[24]   *John Doe VIII* at *10-11 (citing *The Apollon*, 22 U.S. (9 Wheat.) 362, 370 (1824) and *Rose v. Himely*, 8 U.S. (4 Cranch) 241, 279 (1808)). Judge Rogers was clearly persuaded by the weight of common law authority, including *The Apollon*, *Furlong*, and *Rose*, that, although the first Congress may have had no intent to benefit aliens injured abroad, the calculus changes where a U.S. citizen is the cause of the harm alleged. The *John Doe VIII* majority held that Congress has the right to prescribe standards of conduct for American citizens and ruled that there is no extraterritoriality bar where a federal statute provides for liability for a scheme devised and executed in the United States intended to inflict harm abroad.

to the sparse legislative history of the ATCA.[25]  Examining a 1795 legal opinion by Attorney General Bradford, she concluded that the ATCA conferred federal court jurisdiction over international law violations committed within the territorial jurisdiction of foreign countries, but only for actions taken by Americans.[26]  Judge Rogers pointed to the Supreme Court's decision in *United States v. Furlong*,[27] where the Court affirmed the piracy conviction of two U.S. citizens who committed crimes in the territorial waters of Portugal.  Based on the historical record, she concluded that U.S. courts may exercise jurisdiction over international law violations committed by a U.S. citizen beyond U.S. shores and in the territory of another nation.

   Criticizing Judge Kavanaugh's dissent, Judge Rogers noted that, while the first Congress may have had no intent to benefit aliens injured abroad, this calculus changes where a U.S. citizen (like Exxon) is the cause of the alleged harm.[28]  Congress has the right to prescribe conduct for American citizens, she wrote, and the Supreme Court has never found an extraterritorial bar where a federal statute provides for criminal or civil liability for a scheme devised and executed in the United States intended to inflict harm abroad.  Citing Blackstone, Judge Rogers stated that, where an individual violates the law of nations, it is the duty of that individual's national government to take notice of the conduct, or otherwise become an aider and abettor of the violation committed by its own citizen.[29]

---

[25]   *Id.* at *8.

[26]   *Id.*

[27]   18 U.S. (5 Wheat.) 184 (1820).

[28]   *John Doe VIII* at *12.

[29]   *Id.* at *43-44.

Thus, in rejecting the presumption against extraterritoriality, the D.C. Circuit acknowledged that the ATCA was enacted by the first Congress to prevent American nationals from entangling the nation in international disputes. The majority found that the ATCA was never intended by the early Congress to be an assertion of universal civil jurisdiction. Rather, it was introduced as a statute that would protect U.S. interests by avoiding international disputes caused by U.S. citizens abroad.[30] For these reasons, it is now clear that the ATCA's subject matter jurisdiction is limited to cases where a human rights violation occurred in the United States, or where the defendant is a U.S. national, or where, at a minimum, the plaintiff is a resident alien. Such an interpretation of the ATCA conforms to its historical precedents cited in *John Doe VIII* and prevents the United States from becoming an international busybody meddling in the affairs of other countries.

In contrast to the facts in *John Doe VIII*, here, there is not even a hint of a nexus to the United States, as BSI and BSPLC previously argued in support of their motion to dismiss.[31] Neither BSI nor BSPLC is a U.S. corporation. Neither company is headquartered or has operations in the United States. Moreover, plaintiffs in the ATCA count have failed to allege any act or decision to act by BSI or BSPLC that took place in the United States or had an effect here. For these reasons, there can be no subject matter jurisdiction over the plaintiffs' ATCA claims. Indeed, to hold otherwise would violate due process guarantees that require minimum contacts with the United States before this Court can assert jurisdiction. Without a nexus to the

---

[30]   *Accord Filartiga v. Pena-Irala*, 630 F.2d 876, 878 (2d Cir. 1980) (holding that the ATCA implements the constitutional mandate for national control over foreign relations).

[31]   *See* Def. Mem. at 43-45 (discussing plaintiffs' failure to plead any jurisdictional contacts between BSI and BSPLC and the United States for *in personam* jurisdiction).

United States, the assertion of jurisdiction is not only violative of due process but also inconsistent with the purposes of the ATCA.[32]

### III. BSI and BSPLC Cannot Be Liable for Aiding and Abetting Under the ATCA Because There is No Specific, Non-Conclusory, Factual Allegation That They Had Knowledge of the Alleged International Law Violations

In support of their motion to dismiss, BSI and BSPLC previously argued that plaintiffs have failed to offer any non-conclusory factual allegation that BSI and BSPLC acted with knowledge of the international law violations that plaintiffs claim led to their injuries.[33] The D.C. Circuit's holding in *John Doe VIII* confirms that this flaw is fatal to plaintiffs' complaint.

In *John Doe VIII*, the D.C. Circuit held that one can be liable for aiding and abetting international law torts only where the aider and abettor acted with knowledge of the primary violator's breach of international law norms.[34] Concluding that customary international law provides the *mens rea* standard for aiding and abetting liability, the court held that the aider and abettor need not share the primary violator's purpose, but must have knowledge of the violation of international law committed by the primary actor.[35]

Here, there is no specific, non-conclusory, factual allegation that BSI and BSPLC had knowledge of the international law violations complained of by plaintiffs. Instead, plaintiffs have vaguely claimed that BSI and BSPLC somehow shared the Republic of Iran's "purpose and goals." This is plainly insufficient to state a claim for aiding and abetting, because plaintiffs

---

[32] *United States v. Campbell*, 2011 U.S. Dist. LEXIS 81918, at *9 (D.D.C. July 27, 2011).

[33] *See id.* at 3, 20, 22-23 (discussing plaintiffs' failure to plead BSI and BSPLC's knowledge)

[34] *John Doe VIII* at *19.

[35] *Id.*

have failed to make any concrete, non-conclusory, factual allegations that BSI and BSPLC had any knowledge of the alleged acts (namely, the wartime rocket attacks)[36] that plaintiffs claim led to their injuries.

## IV. Provision of Routine Banking Services Cannot Constitute Substantial Assistance Under the ATCA

In support of their motion to dismiss, BSI and BSPLC previously argued that provision of routine banking services (such as those plaintiffs allege BSI and BSPLC provided here) cannot constitute substantial assistance giving rise to liability under the ATCA.[37]  This is entirely consistent with the D.C. Circuit's statements in Judge Rogers's majority opinion in *John Doe VIII* and is also supported by the Seventh Circuit's recent ruling in *Flomo v. Firestone Natural Rubber Co.*[38]

In *John Doe VIII*, the D.C. Circuit rejected the Second Circuit's earlier holding that an aider and abettor must share the same purpose as the principal actor.[39]  Concluding that the proper *mens rea* standard under international law was knowledge, not purpose, Judge Rogers criticized the Second Circuit's analysis of *The Ministries Case* because Second Circuit failed to take into account the tribunal's acquittal of Carl Rasche, the chairman of the Dresden Bank.[40]  Discussing the Second Circuit's error, the majority noted that Mr. Rasche's actions never went

---

[36]   *See* Def. Mem. at 4-5 (discussing the state of war that existed between Lebanon and Israel in 2006).

[37]   *See id.* at 21-22 (identifying plaintiffs' failure to allege substantial assistance).

[38]   As BSI and BSPLC explained previously, it is also consistent with numerous decisions of other federal district courts involving aiding and abetting claims against banks under the ATCA.  *See id.* (citing cases).

[39]   *John Doe VIII* at *19.

[40]   *Id.* (citing *United States v. Von Weizsaecker* ("*The Ministries Case*"), *in* 14 TRIALS OF WAR CRIMINALS BEFORE THE NUREMBERG MILITARY TRIBUNALS UNDER CONTROL COUNCIL LAW NO. 10, at 622 (1997)).

beyond his routine duties as a banker.  For this reason, the court stated, he committed no *actus reus* sufficient to convict him of violations of international law.  The majority's citation of the Rasche acquittal in *The Ministries Case* reinforces BSI and BSPLC's argument that provision of routine banking services, such as those plaintiffs allege BSI and BSPLC provided, is insufficient to give rise to liability under the ATCA.[41]

BSI and BSPLC's argument finds additional support in the Seventh Circuit's recent ruling in *Flomo v. Firestone Natural Rubber Co.*[42]  In that case, plaintiffs sued a U.S. corporation, alleging that the company was using child laborers to perform hazardous tasks at a rubber plantation in Liberia.[43]  On appeal, the court considered two issues: 1) whether a corporation can be liable under the ATCA; and 2) whether, on the evidence presented, there was a violation of customary international law for the defendants' use of child labor in Liberia.

Judge Posner, writing for the majority, concluded that corporations may be held liable under the ATCA in certain circumstances.  The court noted that, while international law imposes substantive obligations, individual nations must decide how to enforce those obligations.[44]  Although it would not be permissible for a nation to expand the scope of liability by creating a remedy inconsistent with international law, the court observed that this would not be the case in *Flomo*, because the plaintiff had conceded that liability was limited to cases where

---

[41] Indeed, BSI and BSPLC's argument is consistent with *Halberstram v. Welch*, 705 F.2d 472 (D.C. Cir. 1983), which looks to five factors in determining whether a person provided substantial assistance: "[1] the nature of the act encouraged, [2] the amount of assistance given by the defendant, [3] his presence or absence at the time of the tort, [4] his relation to the other [tortfeasor] and [5] his state of mind." *Id.* at 478.  None of these factors, applied to the facts at issue here, would warrant imposition of aider and abettor liability on a bank or banker for a routine banking transaction that may have occurred as part of the long line of causation that resulted in assisting an alleged international law violation.

[42] 2011 WL 2675924 (7th Cir. July 11, 2011) ("*Flomo*").

[43] *Id.* at *1.

[44] *Id.* at *5 (citing cases).

the international law violations were directed, encouraged, or condoned at the "decision-making level" of the corporate defendant.[45] The Seventh Circuit thus split from the Second Circuit and joined the D.C. and Eleventh Circuits in holding that corporations can be liable under the ATCA, but only where the international law violations were directed, encouraged, or condoned at the "decision-making level" of the corporate defendant.[46]

Although aiding and abetting liability was not directly at issue in *Flomo*, the Seventh Circuit considered whether a defendant could be liable as an aider and abettor for merely buying tires made from rubber produced at a foreign plantation using child labor. The court concluded that this would stretch customary international law too far.[47] This suggests that liability for aiding and abetting violations of international law must be based not merely on knowledge, but also on assistance beyond routine activities that have the effect of advancing the violation.

Under the rationales of *John Doe VIII* and *Flomo*, routine banking services such as those alleged by plaintiffs in this case simply do not rise to the level of substantial assistance required to impose liability under the ATCA. Plaintiffs have not alleged that BSI or BSPLC did anything other than facilitate a series of routine banking transactions. Nor have they made any specific, non-conclusory, factual allegation that the international law violations set forth in the complaint were directed, encouraged, or condoned at the decision-making level of BSI or

---

[45] *Id.* at *10.

[46] This indicates a clear break with traditional U.S. law holding that a corporation may be held liable for its employees' acts committed within the scope of employment. *New York Central & Hudson River R.R. Co. v. United States*, 212 U.S. 481 (1909). In essence, Judge Posner held that, under international law applied under the ATCA, this principle of U.S. law simply does not apply: international law would not permit the imposition of liability on a corporation unless the violation were directed, authorized, and condoned at the decision-making level of the corporate defendant.

[47] *John Doe VII* at *6.

#14560803 v5

BSPLC. Plaintiffs have therefore failed to allege that BSI or BSPLC provided the sort of substantial assistance that would make their corporate conduct actionable under the ATCA.

## V. If the Court Finds That BSI and BSPLC Are Not State Actors, the Court Should Decline to Exercise ATCA Jurisdiction over BSI and BSPLC

BSI and BSPLC are not state actors, as previously argued in support of the motion to dismiss.[48] A recent decision by the D.C. Circuit, *Shafi v. Palestinian Authority*,[49] holds that there is no action under the ATCA against non-state actors. Accordingly, should the Court determine—as BSI and BSPLC have urged—that they are not state actors, under the D.C. Circuit's ruling in *Shafi*, plaintiffs' ATCA claims against BSI and BSPLC should be dismissed.

The *Shafi* case involved claims that plaintiff was tortured in violation of international law by non-state entities. Chief Judge Sentelle, writing for the majority, held that the plaintiffs' allegations of non-state torture were not recognized as violations of the law of nations and were therefore not actionable under the ATCA.[50] In a concurring opinion, Judge Williams noted the concern that extending ATCA liability for torture to non-state actors could potentially pose a threat to national sovereignty, or even risk embroiling the U.S. in a foreign war if the violation were sufficiently linked to the United States.[51]

All of the concerns expressed by the majority and by Judge Williams in *Shafi* counsel declining to extend the ATCA to encompass plaintiffs' claims in this case. Here, plaintiffs have alleged that the Court should assign liability for routine banking activities carried out by BSI and BSPLC, two non-state actors, based on acts of war that took place outside the

---

[48] Def. Mem. at 30-31. Neither BSI nor BSPLC is a state actor.

[49] 2011 WL 2315028 (D.C. Cir. June 14, 2011).

[50] *Id.* at *8.

[51] *Id.* at *10-12.

United States during the Second Lebanon War.  As explained in detail in BSI and BSPLC's previous submissions, allowing plaintiffs to proceed with their claims in this court raises serious questions best left to the political branches of government.[52]  If this Court agrees that BSI and BSPLC are not state actors, the Court should dismiss plaintiffs' ATCA claims in light of the D.C. Circuit's ruling in *Shafi*.

## VI. Extrajudicial Killing Is Not an International Law Tort Actionable under the ATCA

In support of their motion to dismiss, BSI and BSPLC have argued that the alleged killings that took place here are not "extrajudicial killings."[53]  New authority from the D.C. Circuit takes this argument a step further, stating that extrajudicial killing is not among the international law torts that give rise to a cause of action under the ATCA.

In his dissent in *John Doe VIII*, Judge Kavanaugh indicated that there are currently only seven cognizable international law violations actionable under the ATCA.  These are the three original international law norms recognized by Blackstone: offenses against ambassadors, violations of safe conduct, and piracy, and the four recognized by Justice Breyer in *Sosa*: torture, genocide, crimes against humanity, and war crimes.[54]  Notably, this list does not include extrajudicial killing, which is the only violation for which plaintiffs have claimed that BSI and BSPLC are liable.  Indeed, in his dissent in *John Doe VIII*, Judge Kavanaugh specifically stated that extrajudicial killing is not among the international law violations allowed in an ATCA suit.[55]

---

[52]   Def. Mem. at 5-10.

[53]   *Id.*

[54]   *John Doe VIII* at *48 n. 2 (Kavanaugh, J., dissenting).

[55]   *Id.* at *60 n. 13.

Judge Kavanaugh's opinion is consistent with persuasive authority from other common law courts. In a recent English law case, *Pinochet Ugarte (No. 3)*,[56] the principal opinion of Lord Browne-Wilkinson held that Pinochet could be extradited for torture, which had risen to the level of an international crime, but could not be extradited for murder. This case demonstrates that English courts do not recognize extrajudicial killing as an extraditable international law offense. Moreover, in *Filartiga v. Pena-Irala*,[57] a case involving an extrajudicial killing and torture, the international law cause of action advanced was torture, not extrajudicial killing. From these cases, it is clear that extrajudicial killing has not risen to the level of an international law crime. This makes perfect sense. Otherwise, every killing committed in a foreign country by government officials would be an extrajudicial killing that could be sued upon in U.S. courts.

In *Flomo*, the Seventh Circuit addressed the question of what kinds of violations of international law are actionable under the ATCA in a different way. While the court was unwilling to enumerate the actionable violations, it held that the violation must have a source in international law that is unambiguous and clear, and that there must also be an adequate factual basis for inferring a violation of customary international law—all bearing in mind the Supreme Court's direction in *Sosa v. Alvarez-Machain*:[58] to exercise caution in recognizing new norms in ATCA litigation.

---

[56] *R. v. Bow Street Met. Stipendiary Magistrate and Others, Ex Parte Pinochet Ugarte (No. 3)*, House of Lords, [2000] 1 A.C. 147 at 205 (Lord Browne-Wilkinson) (Eng.) (attached, with emphasis added).

[57] 630 F.2d 876 (2d Cir. 1980).

[58] 542 U.S. 692 (2004).

Under the rationales advanced by Judges Kavanaugh and Posner, it is clear that extrajudicial killing as alleged in plaintiffs' complaint is not a tort in violation of international law that is actionable under the ATCA. Plaintiffs have alleged no international law tort recognized either by Blackstone or by the Supreme Court in *Sosa.* Moreover, plaintiffs have failed to identify any definite and unambiguous international law source that asserts that any of BSI and BSPLC's alleged acts violated international law. There is no legal or factual basis for inferring that BSI and BSPLC committed or aided any violation of international law. For these reasons, this Court should dismiss plaintiffs' ATCA claims.

## VII. The Court Should Decline to Rule Until the D.C. Circuit or Supreme Court Has Resolved the Corporate Liability Question in *John Doe VIII*

In *John Doe VIII*, the D.C. Circuit expressly rejected the Second Circuit's *Kiobel* ruling that corporations cannot be liable under the ATCA. While this Court is obligated to follow the law of the Circuit, BSI and BSPLC note that the plaintiffs in *John Doe VIII* have petitioned for rehearing en banc and the D.C. Circuit has recently ordered the defendant in that case to reply to the *John Doe VIII* plaintiffs' substantive petition.[59] If the petition for en banc rehearing is granted, the question of corporate liability may well be left unresolved for some time. Moreover, because the *John Doe VIII* ruling opened a significant circuit split on the question of corporate liability under the ATCA, even if the D.C. Circuit affirms the panel's ruling, there is a significant likelihood that the *John Doe VIII* plaintiffs will seek the Supreme Court's resolution of the split.[60] This would further delay definitive resolution of the question. For these reasons, BSI and BSPLC respectfully submit that this Court should wait to decide this

---

[59]  Order, *John Doe VIII v. Exxon Mobil Corporation*, No. 09-07125 (D.C. Cir. Aug. 10, 2011).

[60]  Indeed, a petition for a writ of certiorari was filed with the Supreme Court in *Kiobel* on June 6, 2011, and is now fully briefed and awaiting Supreme Court action.

aspect of the motion to dismiss until there is a final answer to the fundamental question whether corporations such as BSI and BSPLC can be liable under the ATCA.

                              Respectfully submitted,

August 15, 2011                  /Frank C. Razzano/
                                       Frank C. Razzano
                                       Jeremy D. Frey
                                       Ivan B. Knauer
                                       Matthew D. Foster
                                       John C. Snodgrass
                                       PEPPER HAMILTON LLP
                                       Hamilton Square
                                       600 Fourteenth Street, N.W.
                                       Washington, DC 20005-2004
                                       (202) 220-1200

                                       *Counsel for Defendants*
                                       *Bank Saderat Iran and Bank Saderat PLC*

                                CERTIFICATE OF SERVICE

       I certify that on August 15, 2011, I filed the foregoing document via ECF with the understanding that the ECF system would automatically serve counsel for the parties.

                                       /John C. Snodgrass/