UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CHAIM KAPLAN, *et al.*,

    *Plaintiffs*,

    *v.*

CENTRAL BANK OF THE
ISLAMIC REPUBLIC OF IRAN, *et al.*,

    *Defendants*.

Case No. 1:10-CV-00483 (RWR)

*Oral Argument Requested*

**BANK SADERAT IRAN AND BANK SADERAT PLC'S
THIRD MEMORANDUM OF SUPPLEMENTAL AUTHORITY**

Frank C. Razzano
Jeremy D. Frey
John C. Snodgrass

PEPPER HAMILTON LLP
Hamilton Square
600 Fourteenth Street, N.W.
Washington, DC 20005-2004
(202) 220-1200

*Counsel for Defendants
Bank Saderat Iran and
Bank Saderat PLC*

August 29, 2012

#16629299 v1

Defendants Bank Saderat Iran ("BSI") and Bank Saderat PLC ("BSPLC") submit this Third Memorandum of Supplemental Authority in support of their motions to dismiss filed August 23, 2010.[1]

## I.      Developments Regarding Plaintiffs' Fifth Claim (ATCA Claim)

As noted in our first Memorandum of Supplemental Authority, neither BSI nor BSPLC are proper defendants under the Alien Tort Claims Act ("ATCA") in light of the Second Circuit's decision in *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 149 (2d Cir. 2010).  In *Kiobel*, the Second Circuit held that corporations cannot be sued under the ATCA.  Since our first Memorandum of Supplemental Authority was filed on February 2, 2011,[2] the Supreme Court has granted certiorari in *Kiobel* to address this issue and resolve the circuit split.  On March 5, 2012, the Supreme Court restored *Kiobel* to the calendar for reargument to address the extraterritoriality issue.  Oral argument has now been scheduled for October 1, 2012.

In light of these events, this Court should await the ruling in *Kiobel* before addressing BSI and BSPLC's motions to dismiss.  After the Supreme Court's ruling in *Kiobel,* this Court should require the plaintiffs to advise whether they are withdrawing their Fifth Claim under the ATCA, and if not, direct the parties to submit briefs setting forth their positions as to the impact of *Kiobel* on plaintiffs' Fifth Claim.

## II.     Developments Regarding Plaintiffs' Sixth and Seventh Claims (Non-Federal Claims) and Personal Jurisdiction

There have been significant legal developments affecting the plaintiffs' Sixth and Seventh Claims under Israeli law for negligence and vicarious liability.  These developments

---

[1]ECF No. 15.

[2] Thereafter, in *John Doe VIII v. Exxon Mobil*, 654 F.3d 11 (D.C. Cir. 2011), the D.C. Circuit issued a contrary ruling on corporate liability under ATCA.

support the defendants' motions to dismiss these counts, and also support the defendants' arguments regarding *in personam* jurisdiction.

A.   **The *Licci* and *Wultz* Holdings Require Dismissal of Plaintiffs' Sixth and Seventh Claims**

*Licci v. Lebanese Canadian Bank*, 672 F.3d 155 (2d Cir. 2012), is essentially the same case as *Kaplan*.  All the plaintiffs in *Licci* are identical to all the plaintiffs in *Kaplan*.  The only differences between *Licci* and *Kaplan* are that (i) the *Kaplan* defendants are different, and (ii) the *Kaplan* complaint includes claims against certain defendants under the Foreign Sovereign Immunities Act ("FSIA") (First and Second Claims).  Otherwise, both cases involve (i) the same claimed injuries occurring in Israel during the Second Lebanon War, and (ii) claims brought by the same plaintiffs, under the Anti-Terrorism Act ("ATA"), ATCA, and Israeli common law, against banks for money transfers.

In *Licci*, the plaintiffs sued American Express Bank ("AmEx") and Lebanese Canadian Bank ("LCB"), based on AmEx's allegedly having served as a U.S. correspondent bank for LCB in facilitating wire transfers on behalf of a Hezbollah affiliate.  672 F.3d at 156.  The conduct of AmEx at issue in *Licci* allegedly occurred solely in New York.  *Id.*  AmEx was sued only on supplemental Israeli law claims, while LCB was also sued under the ATA and ATCA.  *Id.*  AmEx and LCB argued that New York, not Israeli, law governed the issue of the plaintiffs' non-federal claims, and that New York law did not provide a cause of action against the banks.  *Id.* at 157-58.  For its part, LCB complained that use of the AmEx correspondent bank account in New York for the money transfers was insufficient to confer personal jurisdiction over LCB in the first instance.  *Licci v. Lebanese Canadian Bank*, 704 F. Supp. 2d 403, 406 (S.D.N.Y. 2010).

The district court agreed with both these propositions and dismissed the case in its entirety against both AmEx and LCB.  As to LCB, the court found that it had no personal jurisdiction over the bank and dismissed the ATA, ATCA, and common law claims.  *Id*. at 408.  As a result, the district court concluded that it did not even need to address LCB's Rule 12(b)(6) claim.  As to AmEx's motion to dismiss for failure to state a claim as to the Israeli law claims, however, the district court held that, under the law, banks "do not owe non-customers a duty to protect them from the intentional torts committed by [the banks'] customers," and that plaintiffs had failed to plausibly allege that AmEx's conduct was the proximate cause of plaintiffs' injuries.  672 F.3d at 157.

On appeal, the Second Circuit upheld the district court's choice of law analysis and dismissal of AmEx.  *Id*. at 158.  The Second Circuit held that New York law applied even though the torts occurred in Israel and the plaintiffs were all domiciled in Israel.  *Id.*  As to personal jurisdiction over LCB, however, the court certified  to the New York Court of Appeals the question whether the conduct alleged (directing subject money transfers through a U.S. correspondent bank account) was sufficient to satisfy the New York long arm statute.[3]  2012 U.S. App. LEXIS 4525 (2d Cir. Mar. 5, 2012).

*Licci* was recently followed in *Wultz v. Bank of China*, 2012 U.S. Dist. LEXIS 73310 (S.D.N.Y. May 25, 2012).  In *Wultz*, Bank of China ("BOC") was sued for allegedly facilitating wire transfers for the Palestinian Islamic Jihad ("PIJ").  The wire transfers were allegedly initiated by the PIJ in the Mideast, executed by BOC through its U.S. branches, and paid out by BOC to the PIJ in China.  BOC was sued for, among other things, negligence, breach

---

[3]Proceedings on this certified question are still pending before the New York Court of Appeals, but the outcome is immaterial to the result here, since *Kaplan* does not involve any U.S. correspondent bank accounts or any other U.S. nexus for personal jurisdiction.

of statutory duty, and vicarious liability under Israeli law.  The court had initially found that the law of Israel applied.  811 F. Supp. 2d 841 (S.D.N.Y. 2011).  But after *Licci*, the *Wultz* court withdrew and reversed its earlier ruling, and held that Chinese, not U.S. or Israeli, law applied.  The court directed the plaintiffs to advise whether they would dismiss their non-federal claims, and, if not, to provide additional briefing on whether such claims could survive under Chinese law.  2012 U.S. Dist. LEXIS 73310, at *11.

In both the *Licci* and *Wultz* cases, the location of the plaintiffs' injuries did not control the choice of law.  "Instead it is the location of the defendant's conduct that controls" in circumstances where a bank engages in banking transactions "to a person who then transports money . . . and uses it to fund terrorist activities."  *Id.* at *10 & n. 28.  *Licci* and *Wultz* stand for the proposition that Israeli law does not govern plaintiffs' Sixth and Seventh Claims against BSI and BSPLC, and that there is no common law cause of action against BSI and BSPLC.  Moreover, the *Kaplan* plaintiffs, who are the same as the *Licci* plaintiffs, are now collaterally estopped under *Licci*: the Israeli common law claims in *Kaplan* (plaintiffs' Sixth and Seventh Claims) must be dismissed in light of *Licci*.  *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322 (1979).

### B.   *Reed v. Islamic Republic of Iran* Requires Dismissal of the Sixth and Seventh Claims if BSI is an Agency or Instrumentality of a Foreign State

As noted in defendants' motion to dismiss, BSI has not been shown to be an agency or instrumentality of Iran, and accordingly the FSIA claims against BSI (First and Second Claims) should be dismissed.  However, under a new line of cases in the District of Columbia, if BSI were found to be an agency or instrumentality of a foreign state, which is

disputed, then the common law Sixth and Seventh Claims against BSI would need to be dismissed on grounds of preemption.[4]

In *Reed v. Islamic Republic of Iran*, 845 F. Supp. 2d 204 (D.D.C. 2012), the court was asked to enter a default judgment against the defendants under FSIA, Massachusetts law, and international law. The court initially noted that FSIA is the exclusive vehicle for a plaintiff to bring suit against a foreign state. *Id.* at 209 (citing *MacArthur Citizens Ass'n v. Rep. of Peru,* 809 F.2d 918, 919 (D.C. Cir. 1987)). The court granted the plaintiff's motion for a default judgment under FSIA, but denied the motion under the state and international law claims. *Id.* at 215. The court held that FSIA "provides an exclusive cause of action under federal law." *Id.* The court explained that, "[b]y enacting [Section 1605A], Congress intended to preempt other channels for relief and to displace the varied and inconsistent causes of action that were previously cognizable under state and foreign law." *Id.* (citing *Beer v. Islamic Republic of Iran*, 2010 U.S. Dist. LEXIS 129953 (D.D.C. Dec. 9, 2010)). As a result, plaintiffs' Sixth and Seventh Claims must be dismissed if BSI is determined to be an instrumentality or agency of a foreign state, which defendants dispute.[5]

### C.   Under *Licci*, There is No Personal Jurisdiction

Further, *Licci* provides additional support for BSI and BSPLC's argument that there is no personal jurisdiction over them in the first instance. *Licci* is a vastly stronger case for

---

[4]We note for purposes of clarity that dismissal of the Fifth Claim against BSI under the ATCA would also be required if BSI is an agency or instrumentality of Iran. This is not new law, however. It has been established since the Supreme Court's decision in *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428 (1989), that foreign sovereigns may not be sued under the ATCA—only under the FSIA.

[5] *Reed* also makes clear that to be a proper plaintiff in a FSIA case, the plaintiff must be a "national of the United States." 28 U.S.C. Section 1605A(c)(1). A national of the United States is defined in 8 U.S.C. Section 1401(a)-(h). It is unknown whether all or any of the American Plaintiffs are qualifying "nationals" for purposes of Section 1605(A). As this is an issue of the Court's subject matter jurisdiction, some discovery on this issue might be necessary if this case were to proceed.

personal jurisdiction than that presented here:  the *Licci* plaintiffs alleged active execution of relevant conduct through U.S. correspondent bank accounts, but even that was found insufficient to confer personal jurisdiction.  By contrast, in this action, there is no allegation that the subject funds were transferred through any U.S. correspondent bank account.  Indeed, plaintiffs have alleged no connection whatsoever between the United States and BSI or BSPLC—nothing that would provide a basis for personal jurisdiction over either BSI or BSPLC.  Even though the ultimate result in *Licci* is still pending, *Licci* governs these same plaintiffs in *Kaplan* on the issue of personal jurisdiction, and the complaint against BSI and BSPLC should be dismissed accordingly.

## III.    Conclusion

This Court should await the ruling of the Supreme Court in *Kiobel* to decide the pending motions to dismiss.  This Court should order the plaintiffs to advise whether they are withdrawing their Fifth Claim after the *Kiobel* decision is issued.  If the plaintiffs do not withdraw their Fifth Claim, the Court should order additional briefing regarding the impact of *Kiobel* on plaintiffs' Fifth Claim.  Additionally, in light of *Licci, Wultz,* and *Reed*, the Court should also direct the plaintiffs to advise whether they are now withdrawing their Sixth and Seventh Claims, and if not, after the *Kiobel* decision is rendered, direct the parties to brief why these claims are not barred.  In any event, under *Licci,* there is no personal jurisdiction over BSPLC or BSI, and as a result the complaint should be dismissed.

Respectfully submitted,

/Frank C. Razzano/
Frank C. Razzano
Jeremy D. Frey
John C. Snodgrass
PEPPER HAMILTON LLP
Hamilton Square

600 Fourteenth Street, N.W.
Washington, DC 20005-2004

*Counsel for Defendants*
*Bank Saderat Iran and Bank Saderat PLC*

CERTIFICATE OF SERVICE

I certify that on August 29, 2012, I filed the foregoing document via ECF with the understanding that the ECF system would automatically serve counsel for the parties.

/John C. Snodgrass/