UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
------------------------------------------------------------------------X

CHAIM KAPLAN, *et al.*,

                Plaintiffs,   Case no: 10-cv-483 (RCL)

          *-against-*

CENTRAL BANK OF THE ISLAMIC REPUBLIC OF
IRAN, *et al.*,

                Defendants.

------------------------------------------------------------------------X

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
PLAINTIFFS' PENDING UNOPPOSED MOTION TO TRANSFER VENUE**

Plaintiffs respectfully submit this Supplemental Memorandum to advise the Court of a recent development relevant to, and which further supports the granting of, plaintiffs' pending unopposed motion to sever their claims against defendant Bank Saderat PLC ("BSPLC") and to transfer those claims to the United States District Court for the Eastern District of New York. (DE 72).

As the Court is aware, the plaintiffs herein are U.S. citizens who were injured by rockets fired by Hezbollah at Israeli towns in the summer of 2006. This action arises from the fact, confirmed by the U.S. government, that in the years prior to the rocket attacks defendant BSPLC and its parent company, Bank Saderat Iran ("BSI" or "Bank Saderat") transferred at least $50 million to Hezbollah: "Between 2001 and 2006, Bank Saderat transferred $50 million from the Central Bank of Iran through Bank Saderat's subsidiary in London [*i.e.*, BSPLC] to its branch in Beirut for the benefit of Hizballah fronts that support acts of violence." U.S. Treasury Fact Sheet, *Treasury Strengthens Preventive Measures Against Iran*, 11/6/2008.[1]

---

[1] Available at https://www.treasury.gov/press-center/press-releases/Pages/hp1258.aspx

1

During the 2001-2006 period BSI was directly owned by Iran, and plaintiffs therefore asserted claims against BSI in this action under the Foreign Sovereign Immunities Act ("FSIA"). The Court dismissed those FSIA claims, finding that Iran had in the interim disposed of its direct majority ownership of BSI, and that BSI was therefore no longer an agency or instrumentality of a foreign state under the FSIA. *Kaplan v. Cent. Bank of Islamic Republic of Iran*, 961 F. Supp. 2d 185, 198-199 (D.D.C. 2013) ("BSI is not an 'agency or instrumentality' because it was not majority-owned by a foreign state at the time the suit was filed. Accordingly, plaintiffs' FSIA claims against BSI will be dismissed.").[2] The Court also declined to exercise supplemental subject-matter jurisdiction over plaintiffs' non-federal claims against BSI. *Id*. at 206 ("Because the Court has dismissed all federal claims against BSI and BSPLC, the Court will decline to exercise supplemental jurisdiction over these remaining Israeli law claims against these defendants.").

On December 31, 2018, a parallel ATA action was filed in the U.S District Court for the Eastern District of New York against BSPLC and BSI. *Kumer, et al. v. Bank Saderat Iran, et al.*, 18-cv-07456 (EDNY) ("*Kumer* Action").[3] The allegations and bases of liability asserted against BSPLC and BSI in the *Kumer* Action are substantively identical to those in this action: the *Kumer* Action arises, like the instant action, from BSPLC's and BSI's provision of $50 million to Hezbollah between 2001 and 2006. *See* Complaint in the *Kumer* Action (Exhibit A).

---

[2] As the Court noted, plaintiffs did not bring claims against BSI under the Antiterrorism Act ("ATA"), 18 U.S.C. § 2333. *Kaplan*, 961 F. Supp. 2d at 199 ("The American plaintiffs assert claims under the ATA, 18 U.S.C. § 2333(a), against BSPLC (not BSI).").

[3] The statute of limitations on ATA actions arising from terror attacks which occurred after September 11, 2001, expired on January 2, 2019. *See* National Defense Authorization Act for Fiscal Year 2013, Pub. L. No. 112-239, § 1251(c) (Jan. 2, 2013) (set out as a note to 18 U.S.C. § 2333 (Special Rule Relating to Certain Acts of International Terrorism)) (extending until January 2, 2019, the statute of limitations on ATA claims arising from terrorist attacks that occurred after September 11, 2001).

Three of the plaintiffs asserting claims against BSI and BSPLC in the new *Kumer* Action – Malka Kumer, Chana Liba Kumer and Miriam Almackies – were not plaintiffs in the instant action but, exactly like the plaintiffs in this action, are U.S. citizens injured by Hezbollah's rocket attacks on civilian population centers in Israel in 2006. Indeed, Malka and Chana Liba Kumer are the daughters of Chayim Kumer and Nechama Kumer, who are plaintiffs in this action, and Miriam Almackies is the daughter of Dvora Chana Kaszemacher, who is also a plaintiff in this action.

Additionally, the plaintiffs in the instant action have brought ATA claims against BSI in the *Kumer* Action.[4] Exhibit A at ¶¶ 127-147.

The pendency of the *Kumer* Action in the EDNY constitutes a powerful additional reason to grant plaintiffs' pending motion to transfer venue.[5] The ATA action by Malka Kumer, Chana

---

[4] Because this Court's dismissal of plaintiffs' FSIA action against BSI constituted a dismissal for lack of subject-matter jurisdiction (*cf. Schubarth v. Fed. Republic of Germany*, 891 F.3d 392, 398 (D.C. Cir. 2018)), as did the decision declining jurisdiction over the nonfederal claims, plaintiffs are not precluded from pursuing an ATA action against BSI for its role in the $50 million payment to Hezbollah. "The basic rule that dismissal for lack of subject-matter jurisdiction does not preclude a second action on the same claim is well settled." *Angelex Ltd. v. United States*, 123 F. Supp. 3d 66, 77-78 (D.D.C. 2015) (citation omitted).

As discussed in plaintiffs' motion to transfer, it appears that under this Court's ruling in *Wultz v. Islamic Republic of Iran*, 762 F. Supp. 2d 18 (D.D.C. 2011), nationwide personal jurisdiction is lacking over BSPLC here because the plaintiffs cannot satisfy the ATA's special venue provision, 18 U.S.C. § 2334. Thus, since this case has no personal jurisdiction nexus specifically with the District of Columbia, plaintiffs face the risk that the Court will elect to dismiss this case under *Wultz*, rather than transfer it. Given that risk, and in the face of the expiration of the ATA limitations period on January 2, 2019, the plaintiffs herein reasserted their claims against BSPLC in the *Kumer* Action, solely as a protective measure. There is clear authority that where, as here, a plaintiff faces jurisdictional uncertainty in one suit and the expiration of a statute of limitations which would bar a new suit – the proper course is to file a "protective suit." *See e.g. Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986) ("Elementary prudence" requires a party "to file a protective suit" prior to the expiration of the statute of limitations, when personal jurisdiction is uncertain in the first action). Plaintiffs respectfully still believe that the proper course, preferable to dismissal under *Wultz*, would be to transfer this 2010 case to the EDNY and to allow them, in the first instance, to proceed in this case.

Liba Kumer and Miriam Almackies against BSPLC in *Kumer* mirrors the instant ATA action against BSPLC. Indeed, as noted, Malka, Chana Liba and Miriam are the daughters of plaintiffs in this action. Thus, to preserve judicial and party resources, and to prevent the risk of conflicting decisions in effectively identical cases, this case and the *Kumer* Action should be heard together.

Likewise, this ATA action against BSPLC should be heard together with the plaintiffs' ATA claims against BSI in the *Kumer* Action. As discussed above, the claims against BSPLC and BSI arise from the same factual nucleus described by the U.S. Treasury, namely: that between 2001 and 2006, BSI "transferred $50 million from the Central Bank of Iran through" BSPLC, to BSI's "branch in Beirut for the benefit of Hizballah fronts that support acts of violence."[6] In other words, the $50 million at issue went from Iran to BSI, from BSI to BSPLC, from BSPLC back to BSI, and finally from BSI to Hezbollah. Clearly, then, plaintiffs' action against BSPLC, and their action against BSI, arising from these transfers, should be heard in tandem by the same court.

---

[5] The *Kumer* Action was filed in the EDNY because, as discussed in plaintiffs' motion, *Lelchook v. Islamic Republic of Iran*, 224 F. Supp. 3d 108 (D. Mass. 2016) found that the BSI-BSPLC-Hezbollah wire transfers likely went through New York and thus provide a basis for personal jurisdiction in the EDNY. *Id*. at 117.

[6] *See* footnote 1.

**WHEREFORE** plaintiffs' unopposed motion to transfer venue should be granted.

           Respectfully submitted,

           THE BERKMAN LAW OFFICE, LLC
           *Attorneys for the Plaintiffs*

by: /s/ Robert J. Tolchin

           Robert J. Tolchin
           (D.C. Bar # NY0088)
           111 Livingston Street, Suite 1928
           Brooklyn, New York 11201
           (718) 855-3627
           rtolchin@berkmanlaw.com